NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0208n.06
Filed: March 18, 2009

No. 08-3019

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| HANS LINDOR, | ) | |
| | ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW |
| | ) | OF AN ORDER OF THE BOARD |
| v. | ) | OF IMMIGRATION APPEALS |
| | ) | |
| ERIC H. HOLDER, JR.,[1] | ) | **O P I N I O N** |
| Attorney General of the United States, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**Before: MERRITT, ROGERS, and WHITE, Circuit Judges.**

**WHITE, Circuit Judge.** Petitioner Hans Lindor seeks review of the December 10, 2007 order of the Board of Immigration Appeals (BIA) denying his August 2007 motion to reopen immigration proceedings on the basis of changed country conditions in Haiti. We GRANT the petition for review in part and REMAND, DISMISS the petition in part for lack of jurisdiction, and otherwise DENY the petition.

### I. BACKGROUND

Lindor is a native and citizen of Haiti. According to a statement attached to his asylum application, Lindor obtained a Canadian visa and left Haiti on August 14, 1995. He subsequently

---

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H. Holder, Jr. is automatically substituted for former Attorney General Michael B. Mukasey as Respondent in this case.

applied for refugee status, but was denied, and the Canadian government ordered his deportation. On or about September 30, 1998, Lindor entered the United States at an unknown port of entry.

On February 14, 2000, Lindor filed a request for asylum (Form I-589). In this application, Lindor stated that he was seeking asylum "because m[y] life is threatened to death in my home country, Haiti." Administrative Record ("A.R.") 271. He claimed that "[m]y father and my mother were both assas[s]inated by the police because they were Duvalierist. . . . Two weeks after I left [Haiti], my older brother, Edouard Jr., . . . was shot by three policemen. People say[] that now that I am gone, my sister Edith is next. If I go back to Haiti, I will be dead too." *Id.* In an attached statement, Lindor alleged that his mother had been shot and killed by police, and that his sister had been beaten by police several times. He claimed that "[t]he government that is involved in corruption, murders and wants to destroy my family . . . is still ruling my country." *Id.*

The Immigration and Naturalization Service (INS) rejected Lindor's request for asylum on March 30, 2000. It found that Lindor had not demonstrated with clear and convincing evidence that his application for asylum was filed within one year of his arrival in the United States, that there were no "changed circumstances" in applicable U.S. law or country conditions that would materially affect his asylum eligibility, and that there were no "extraordinary circumstances" in Lindor's case that would have caused a failure to file his asylum request within one year. Accordingly, a "Notice to Appear" was issued and Lindor was placed in removal proceedings pursuant to section 237(a)(1)(A) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(1)(A), for failure to possess a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by the INA.

On March 22, 2002, an Immigration Judge (IJ) granted Lindor's application for voluntary departure under section 240B(a) of the INA, 8 U.S.C. § 1229c(a), in lieu of being subject to removal proceedings. Lindor was ordered to voluntarily depart without expense to the Government on or before July 22, 2002; the order further provided that if Lindor failed to do so, the voluntary departure order would be withdrawn and Lindor would be ordered removed to Haiti on the charge in the Notice to Appear.[2] In June, just before the 90-day window in which a motion to reopen may be properly filed was about to close, Lindor attempted to file a "Motion to Reopen Removal Proceedings" with the IJ, seeking reopening for an adjustment of status due to what he claimed was a bona fide marriage to a United States citizen. However, the Immigration Court returned the motion to Lindor because it had not been accompanied by a certificate of service. By the time Lindor re-filed the motion with the Immigration Court in August, his motion to reopen was no longer timely. The IJ denied Lindor's motion to reopen for a variety of reasons, and Lindor appealed. On October 10, 2003, the BIA dismissed the appeal, finding that the motion to reopen "should be denied because it was not properly filed within 90 days of the Immigration Judge's prior order," as "inclusion of a properly-executed certificate of service is mandatory" and not harmless—and, "even if" the BIA were to otherwise consider the appeal, it should be denied "because the respondent failed to depart as required pursuant to the terms of the grant of voluntary departure." A.R. 98-99.[3]

---

[2]The order additionally provided that remaining in the United States past the voluntary departure date would also make Lindor ineligible for various forms of relief, including adjustment or change of status, for a period of ten years from scheduled departure.

[3]Lindor did not petition this court to review the BIA's denial of his first motion to reopen, and we do not review it here.

3

On August 27, 2007—nearly four years after the BIA dismissed the appeal of the IJ's decision on his first motion to reopen—Lindor filed a second motion to reopen with the BIA. A.R. 20-95.[4] Although titled as "based on [an] INA § 208(a)(2)(D) exemption to the one-year" deadline to file for asylum,[5] Lindor's motion argued that the BIA had jurisdiction to consider the motion pursuant to 8 C.F.R. § 1003.2(c)(1) and that Lindor would "present new evidence of events that . . . were not previously available." A.R. 20, 24. He recognized the requirement that a motion to reopen be submitted to the BIA within ninety days of the issuance of a final administrative order, but claimed that because "events have transpired" in Haiti "that pose a real threat of persecution," he "is able to reapply for asylum and withholding of removal 'based on changed circumstances arising in the country of nationality.'" *Id.* (quoting 8 C.F.R. § 1003.2(c)(3)(ii)).[6]

Specifically, Lindor pointed to his 2005 publication of a novel entitled "It's a Shame to be a Negro." A.R. 24. He claimed that during one interview with a Haitian radio station to promote the novel, he "openly criticized the government" and was "very vocal about his opposition to the Haitian

---

[4]Lindor failed to include a certificate of service when he initially attempted to file this second motion to reopen. *See* A.R. 18 (letter from clerk's office stating that the motion to reopen received by the BIA on August 13, 2007 was rejected because there was no certificate of service on the opposing party).

[5]Notwithstanding the rule that an alien may not apply for asylum if such an application is not filed within one year after the alien's arrival in the United States or if the alien has previously applied for asylum and that application has been denied, "[a]n application for asylum of an alien may be considered . . . if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within [the one-year time limit]." 8 U.S.C. § 1158(a)(2)(D).

[6]The other portions of his motion contained arguments that Lindor meets the requirements for withholding of removal and thus should not be removed, and that he is eligible for protection under the United Nations Convention Against Torture. *See* A.R. 36-40.

4

political structure," and that he subsequently "began to receive threats via email through [his] website." A.R. 24-25; *see also* A.R. 31 (stating that Lindor "did not travel to Haiti to conduct these radio interviews, but rather called[]in to Haitian radio stations"). Lindor contended that the political positions he took in the course of his work "make the threat of persecution, if he were to return to Haiti, real." A.R. 25.

Furthermore, Lindor claimed that his older brother, "a member of the political party MOCHRENA," was shot and killed "by a group of unknown men." A.R. 24; *see also* A.R. 35. He also claimed that "[s]ince [his] initial application for asylum the pattern of persecution continues," as his younger brother Frantz apparently had a warrant issued for his arrest in 2005 for "prejudicial defamation to the detriment of the internal security of the Haitian state," which Frantz believed "was not only because of his involvement of [sic.] MOCHRENA political party, but also because of his father's previous involvement with the Duvalier government." A.R. 35. This argument was part of a section that argued Lindor's "motion to reopen should be granted along with asylum" and began by stating that the BIA "should grant this motion to reopen" because "new evidence has emerged" demonstrating that Lindor qualifies for asylum on account of his political opinion and familial membership. A.R. 26.[7]

Attached to Lindor's motion to reopen were various signed declarations of Lindor and his family members alleging that Lindor would be subject to persecution and death if he returned to Haiti, a copy of a 2005 arrest warrant for Lindor's younger brother in Haiti, translated copies of three

---

[7]In the reply brief Lindor filed with the BIA, he argued that his motion to reopen was exempt from the usual time limitations for such motions because it was based on "changed circumstances" and previously unavailable and undiscoverable material evidence, "including the fact that [Lindor's] brother was recently murdered and that [Lindor] recently published a novel as a result of which he has received numerous threats and harassment." A.R. 6 (citing 8 C.F.R. § 1003.2(c)(3)(ii)).

emails purportedly sent in October 2006 expressing threats against Lindor regarding his radio interview, a Michigan newspaper article describing a book-signing for Lindor's novel, translations of Haitian police documents from 1999 and 2006 purportedly depicting the discovery of family members' bodies and the circumstances of their deaths, and copies of the 1999 and 2003 Department of State Country Reports on Human Rights Practices for Haiti. A.R. 45-95.

The Government opposed Lindor's motion. On December 10, 2007, the BIA denied Lindor's motion to reopen in a three-paragraph *per curiam* order. After recounting Lindor's prior proceedings and quoting the regulation setting forth the time and numerical limits on motions to reopen, the BIA ruled as follows:

> The respondent has already sought reopening of the final administrative order before the Immigration Judge. That motion to reopen was denied and the Immigration Judge's decision was appealed to and affirmed by this Board. Moreover, the respondent did not file his most recent motion to reopen within 90 days of the final administrative decision. Further, we do not find that the respondent's published novel and alleged new threats due to his novel, which in essence amount to a change in personal circumstances, constitute a change in circumstances arising in the country of nationality which would create an exception to the time and numerical limitations for filing a motion to reopen. 8 C.F.R. § 1003.2(c)(3)(ii) (2007). Accordingly, the instant motion is denied as barred by both the number and time limitations on motions to reopen.

A.R. 3. Lindor filed a timely notice of petition for review with this court.

## II.  DISCUSSION

We review the denial of a motion to reopen for an abuse of discretion. *Tapia-Martinez v. Gonzales*, 482 F.3d 417, 421 (6th Cir. 2007). Issues of law are reviewed de novo. *Id.* "The Supreme Court has made clear that reopening is discretionary with the BIA and that the BIA retains broad discretion to grant or deny such motions. Because the BIA has such broad discretion, a party seeking reopening or reconsideration bears a 'heavy burden.'" *Alizoti v. Gonzales*, 477 F.3d 448,

6

451 (6th Cir. 2007) (citing *INS v. Doherty*, 502 U.S. 314, 323 (1992)); *see also Daneshvar v. Ashcroft*, 355 F.3d 615, 625 (6th Cir. 2004) (noting that the BIA's discretion "is broad but is not unlimited"). "The BIA abuses its discretion when it acts arbitrarily, irrationally or contrary to law." *Sswajje v. Ashcroft*, 350 F.3d 528, 532 (6th Cir. 2003). In determining whether an abuse of discretion occurred, we must decide whether the denial of the motion to reopen "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005) (quotation marks omitted).

A party must generally file a motion to reopen "within 90 days of the date of entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(7)(C)(i); *see also* 8 C.F.R. § 1003.2(c)(2). However, one exception to this ninety-day time limit is for motions "based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii); *see also* 8 C.F.R. § 1003.2(c)(3)(ii) ("The time and numerical limitations . . . shall not apply to a motion to reopen proceedings . . . [t]o apply or reapply for asylum or withholding of deportation based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing[.]").

## A.

Lindor first argues that the BIA's characterization of his motion to reopen was "overly narrow." He acknowledges that publication of his novel itself was a change in personal

7

circumstances, but maintains that he demonstrated changed country conditions by submitting evidence of the October 2006 threats to his life that he received from individuals in Haiti, the murder of his older brother in September 2006, the 2005 arrest warrant issued for his younger brother which allegedly forced that brother to flee Haiti, and the political persecution of other individuals in Haiti.

To the extent that the BIA ruled that Lindor's published novel and the "alleged new threats due to his novel" did not create an exception to the time and numerical limitations for filing a motion to reopen, its decision was not an abuse of discretion. The threats Lindor allegedly received in October 2006 resulted from his publication of his book and his subsequent interviews with Haitian radio stations to which he called in while he was in the United States, rather than being "changed country conditions arising in the country of nationality . . . ." 8 U.S.C. § 1229a(c)(7)(C)(ii); *cf., e.g.*, *Haddad*, 437 F.3d at 517 (holding that petitioner's divorce "was a purely personal change in circumstances that does not constitute changed conditions or circumstances in Jordan"); *cf. also Niyibizi v. Mukasey*, No. 07-3805, 2008 WL 4889008, at *3 (6th Cir. Nov. 6, 2008) (explaining that *Haddad* and other cited cases concerning purely personal changes in circumstances "dealt solely with a static country condition that would now affect the applicant due to a personal choice the applicant made while in this country"); *Cheng Chen v. Gonzales*, 498 F.3d 758, 760 (7th Cir. 2007) (Posner, J.) ("The distinction that section 1229a(c)(7)(C)(ii) . . . makes between changed *country* conditions and changed *personal* conditions is sensible, since the alien can manipulate the latter but not the former . . . .").

However, in determining whether the BIA abused its discretion, "the Board's denial of relief may be affirmed only on the basis articulated in the decision and this Court may not assume that the Board considered factors that it failed to mention in its opinion." *Daneshvar*, 355 F.3d at 626. In

8

the instant case, the BIA merely stated it "d[id] not find that [Lindor's] *published novel and alleged new threats due to his novel*, which in essence amount to a change in personal circumstances, constitute a change in circumstances arising in the country of nationality which would create an exception to the time and numerical limitations for filing a motion to reopen." A.R. 3 (emphasis added). The BIA did not address Lindor's other claims and proffered evidence of what he considered "changed country conditions"—the alleged murder of his older brother, arrest warrant issued for his younger brother, and political persecution of others in Haiti. The BIA cited to § 1003.2(c)(3)(ii) simply to provide its reason for its conclusion regarding the novel and the alleged threats that arose from the novel's publication; this citation did not indicate that it addressed Lindor's other arguments. In any event, "[c]ursory, summary, or conclusory statements are inadequate" in BIA decisions. *Daneshvar*, 355 F.3d at 626.

Although "[w]e do not require the Board's opinion to mention every piece of evidence before it or every logical element of a motion," it is nevertheless compelled to "analyze and explain the basis on which it decide[s] against [a petitioner]." *See Zhang v. Mukasey*, 543 F.3d 851, 854 (6th Cir. 2008). As we recently observed in *Zhang*, "there are 'at least three independent grounds on which the BIA might deny a motion to reopen—failure to establish a prima facie case for the relief sought, failure to introduce previously unavailable, material evidence, and a determination that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief which he sought.'" *Id.* (quoting *INS v. Doherty*, 502 U.S. 314, 323 (1992) (internal citations omitted)). In *Zhang*, we ruled that the BIA had sufficiently analyzed and explained the basis for its decision because it held that a "necessary element" of petitioner's claim failed, thus causing petitioner's entire motion to fail. *See id.* (observing that the BIA rejected the credibility of

9

petitioner's evidence and held that she did not establish that she faced a risk of individual persecution). The BIA "owed no duty to rehearse the rest of [petitioner's] evidence for sake of completeness." *Id.* at 855.

In *Zhang*, the BIA based its ruling denying petitioner's motion to reopen on the "independent ground" that petitioner did not demonstrate an element of a prima facie case for relief—that she faced a risk of individual persecution—a decision which we determined to have been "rationally explained and within its established policy." *Id.* at 855. It was for this reason that any discussion by the BIA of Zhang's documents purportedly showing a different element of petitioner's claim—changed country conditions—would have been "needless[]." *Id.* In the instant case, by contrast, the basis for the BIA's denial of Lindor's motion to reopen was Lindor's failure to introduce previously unavailable, material evidence of changed country conditions. *See* A.R. 3 (citing 8 C.F.R. § 1003.2(c)(3)(ii)). Its ruling that Lindor's "published novel and the alleged new threats due to his novel" did not establish changed country conditions was necessary, but not sufficient, support of its conclusion that Lindor failed to introduce previously unavailable, material evidence of changed country conditions.

The BIA can elect to base its decision denying a motion to reopen on any "independent ground," but once it elects the ground(s) on which to base its ruling, the BIA "need[s] [to] analyze and explain the basis on which it decide[s] against [a petitioner]." *See Zhang*, 543 F.3d at 854; *see also Zheng v. Att'y Gen. of the U.S.*, 549 F.3d 260 (3d Cir. 2008) ("But regardless of which of these multiple bases for denying a motion to reopen that the BIA is examining, when considering a motion to reopen the BIA must actually consider the evidence and argument that a party presents.") (internal quotation marks omitted). By not addressing whether Lindor, by his alleged evidence and arguments

10

concerning his older brother's murder, his younger brother fleeing after an arrest warrant was issued, and political persecution in Haiti, established a change in country conditions sufficient under applicable laws and regulations to excuse the time bar on motions to reopen—that is, by not addressing whether that evidence "is material and was not available and could not have been discovered or presented at the previous hearing" (8 C.F.R. § 1003.2(c)(3)(ii))—the BIA abused its discretion. *See Habchy v. Filip*, 552 F.3d 911, 915 (8th Cir. 2009) ("While it is well established that the BIA has broad discretion to grant or deny a motion to reopen, if it does not articulate a reasoned basis for rejecting the motion or fails to consider all the aspects of the petitioner's claim, it has abused its discretion.").[8]

Accordingly, we grant the petition for review in part and remand to the BIA for proceedings consistent with this opinion.

**B.**

We reject Lindor's other three arguments for why his petition should be granted. One argument is that the BIA "failed to give proper weight, if any," to this court's decision in *Haddad v. Gonzales*, 437 F.3d 515 (6th Cir. 2006). In *Haddad*, we held that the petitioner's divorce was a changed personal circumstance and not a changed country condition under 8 U.S.C. §

---

[8]The Government argues that Lindor did not establish changed country conditions because he "offers no comparison of the country conditions in Haiti from the time of his removal order to the time he filed his untimely second motion to reopen, beyond including the 1999 and 2003 Country Reports as exhibits." However, the BIA did not address this alleged omission by Lindor when it denied Lindor's motion to reopen, and "the Board's denial of relief may be affirmed only on the basis articulated in [its] decision." *Daneshvar*, 355 F.3d at 626. The Government also argues that "by failing to include an application for asylum with his second and untimely motion to reopen, Lindor [] failed to make a prima facie showing that he has a well-founded fear of persecution." Yet the BIA did not base its ruling on the "independent ground" of failure to establish a prima facie case, and we may not affirm the BIA on this basis when this was not the BIA's articulated basis for its denial of Lindor's motion. *Id.*

11

1229a(c)(7)(C)(ii), but then indicated that "the denial of [petitioner's] motion to reopen does not leave [petitioner] without the possibility of any remedy, as she may file a new asylum application . . . 'if the alien [satisfactorily] demonstrates . . . changed circumstances which materially affect the applicant's eligibility for asylum.'" *Haddad*, 437 F.3d at 517-18 (quoting 8 U.S.C. § 1158(a)(2)(D)). Lindor contends that even if he has not demonstrated changed country conditions under § 1229a(c)(7)(C)(ii), the events in question in this case constitute changed circumstances under § 1158(a)(2)(D) "and the Board should have adjudicated [his] motion to reopen accordingly."[9]

Lindor's argument is unavailing. We recently clarified that *Haddad*'s holding was "limited to whether Haddad's changed personal circumstances . . . supported a motion to reopen" and observed that other courts have characterized *Haddad*'s other discussion as dicta. *See Zhang*, 543 F.3d at 857. We "conclude[d] that the BIA reasonably interpreted §§ 1158(a)(2)(D) and 1229a(c)(7)(C)(ii) of Title 8 as requiring an alien subject to a final order of removal for 90 days or more to make a successful motion to reopen her proceedings prior to consideration of a successive application for asylum." *Id.* at 859. Because Lindor has not yet made a successful motion to reopen, his argument here fails.

Lindor also argues that the BIA erred when it determined that his August 2007 motion to reopen was barred by the numerical limitation on such motions because he only filed one motion to reopen with the BIA itself. This argument fails. *See* 8 C.F.R. § 1003.2(c)(2) (stating that "an alien may file only one motion to reopen . . . (*whether before the Board or the Immigration Judge*)") (emphasis added); *see also Tapia-Martinez*, 482 F.3d at 420-22 & n.4 (finding a second motion to

---

[9]He attempts to avoid the fact that he has not filed a new asylum application by contending that requiring him to do so "would not be in the interest of judicial efficiency."

reopen to be numerically barred under § 1003.2(c)(2) where petitioner filed her first motion to reopen with the Immigration Judge, which denied the motion and which the BIA affirmed, and filed her second motion to reopen with the BIA).

Finally, Lindor argues that the BIA should have reopened his case *sua sponte* under 8 C.F.R. § 1003.2(a), which provides that the BIA "may at any time reopen or reconsider on its own motion any case in which it has rendered a decision." We have previously held that we "lack[] jurisdiction to find that the BIA abused its discretion by failing to exercise its discretionary authority to reopen [the petitioner]'s proceedings. . . . The decision whether to invoke *sua sponte* authority is committed to the unfettered discretion of the BIA . . . [and is] not subject to judicial review." *Harchenko v. INS*, 379 F.3d 405, 410-11 (6th Cir. 2004) (citations and quotation marks omitted). Thus, we dismiss the petition for lack of jurisdiction insofar as it requests this court to review the BIA's failure to exercise its *sua sponte* authority. *See Barry v. Mukasey*, 524 F.3d 721, 726 (6th Cir. 2008).

### III. CONCLUSION

For the reasons stated above, we GRANT the petition in part and REMAND to the BIA for further proceedings consistent with this court's opinion, DISMISS the petition for review insofar as we lack jurisdiction to review the BIA's failure to exercise its *sua sponte* authority, and otherwise DENY the petition for review.