RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0239p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

ÇILE PREÇETAJ,

                        *Petitioner*,

    *v.*

JEFFERSON B. SESSIONS, III, Attorney General,

                        *Respondent*.

No. 18-3231

─────────────

On Petition for Review from the Board of Immigration Appeals;
No. A 078 648 981.

Decided and Filed: October 24, 2018

Before: SUHRHEINRICH, MOORE, and BUSH, Circuit Judges.

─────────────

### COUNSEL

**ON BRIEF:** Michael J. Lacey, Mt. Clemens, Michigan, for Petitioner. Karen L. Melnik, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

─────────────

### OPINION

─────────────

JOHN K. BUSH, Circuit Judge. Çile Preçetaj petitions for our review of the order of the Board of Immigration Appeals ("Board" or "BIA") denying her motion to reopen her removal proceeding. At issue is whether the Board erred in denying Preçetaj's motion based on the evidence she submitted regarding changed country conditions, and, if the Board erred, whether such error is harmless. We hold that the Board erred and such error is not harmless; thus, we REMAND the motion to the Board.

I.

Preçetaj is a native and a citizen of Albania. She entered the United States without admission in June 2000. Upon her arrival, Preçetaj filed her first asylum application in August 2000, averring that "criminal gangs constantly threaten [her] family," and, "though [her] father is not politically involved, he is a target because he is employed by the highway department . . . ." She also attested that she was afraid of being kidnapped and placed into forced prostitution. In July 2001, the Immigration and Nationality Service ("INS") served Preçetaj with a Notice to Appear, charging her with removability. Preçetaj conceded the charge of removability.

In June 2005, the Immigration Judge denied Preçetaj's asylum application and ordered her removal to Albania. The Immigration Judge found Preçetaj incredible because her claim "devolved over a period of time." For instance, the Immigration Judge found that she added allegations to her petition, including that her son would be subject to kidnapping in Albania, that she had some difficulty practicing her religion in Albania, and that she would suffer shame as an unmarried mother. Moreover, the Immigration Judge found that there were several "red flags" regarding Preçetaj's credibility. She was inconsistent about whether she returned to Albania or attempted to flee on prior occasions, whether her family experienced problems in Albania, and whether she and her family were subject to political-opinion persecution or otherwise politically involved in Albania. The Immigration Judge also found that Preçetaj did not provide corroborative documents and that she did not establish that those in her social group are subject to a pattern or practice of persecution.

Preçetaj appealed the decision to the Board, and the Board adopted and affirmed the Immigration Judge's decision. In February 2007, Preçetaj filed a petition for review with this court, and we denied it. *Preçetaj v. Mukasey*, No. 7-3170 (6th Cir. Feb. 15, 2007) (order).

Over five years later, in October 2012, Preçetaj filed her first motion to reopen her removal proceedings. In January 2013, the Board denied the motion. In February 2013, Preçetaj filed a second review petition challenging the denial of her first reopening motion, and we again denied it. *Preçetaj v. Mukasey*, No. 13-3172 (6th Cir. Feb. 15, 2013) (order).

Nearly another four years later, in September 2017, Preçetaj filed the present motion to reopen her removal proceeding. In her motion, Preçetaj argued that "country conditions in Albania have changed . . . since a recent Socialist Party victory at the polls," and thus, "conditions in Albania have deteriorated." Specifically, Preçetaj argued that recently, "her family has been threatened with government persecution" and that her family is a "distinct social group." The Board denied the motion, and it is the Board's decision that is the subject of our review.

In support of her motion to reopen her removal proceeding, Preçetaj appended three documents: (1) a psychological report about her children; (2) Preçetaj's original asylum application, including an updated I-589 Statement; and (3) an affidavit from her expert witness Prenk Camaj, who detailed Albania's political history and internal violence.

The psychological report contained no information about Albania's country conditions.

The first three paragraphs of Preçetaj's Statement do not refer to country conditions, but rather, discuss her difficulties with Immigration and Customs Enforcement and how deportation will affect her three American-born children, because they do not speak Albanian and will face difficulties remaining in Albania. In the fourth and final paragraph, Preçetaj stated that since the recent elections in Albania, there have been crackdowns on Democratic Party activists, including her father, brother, and sister. She also explained that her "family were wealthy farmers, but their lands were confiscated and were never returned, to this day. Two of my uncles were killed on their farms in the past for their activities . . . ." Additionally, Socialist Party agents have gone to her home and threatened her parents.

Camaj, who attested that he has testified or provided expert reports in over 25 immigration proceedings, submitted a 14-page affidavit. The affidavit began by detailing the personal account included in Preçetaj's Statement. Camaj concluded that, in his expert opinion, "Preçetaj's family was targeted, labeled, and singled out for the severest persecution" and as a result, "[t]heir choices are to be killed, remain in strict hiding or to flee Albania."

Camaj also detailed his concern with the State Department Report on Country Conditions in Albania, stating that State Department reports of Albania "fall very short of the facts and reality." In support, he submitted the following facts:

- The Albanian National Records from 1990 to the present show that Albania has had the highest per capital emigration rate in the world, "mainly because of the ongoing variety of persecution."

- There are three to four killings in Albania every day, and "it is common knowledge that half are political killings[, though] the government labels them otherwise."

- As a result of meeting with various presidents and prime ministers of Albania, and from going on fact-finding missions to Albania, Camaj was "disappointed to see the continuing downward spiral of country conditions, because of the head on collision of the Socialist and Democratic Parties."

- From mid-2005 through mid-2009, "killings and disappearances skyrocketed out of control . . . ." For instance, the chief editors of two newspapers were severely beaten, as reported in the reputed Albanian newspaper *Our Time*. Moreover, "[t]he Democratic Party Chairman of Has-Kukes, a medical doctor and a Parliamentary candidate disappeared during the summer elections of 2005 and was found dead weeks later, handcuffed and tied to a bridge." "Thousands of people considered less significant continued to be killed until today."

- In July 2006, infighting in the Albanian Parliament caused its shutdown as well as threats against the lives of its members, and members of the Democratic Party went into seclusion for an emergency meeting.

- "[T]he local and regional elections originally scheduled for October 2006 were postponed and held hostage by the Socialist Party until February 18, 2007," and the elections were violent and fraudulent. Furthermore, the Socialists continue to maintain power locally and regionally, which proves a threat to Preçetaj.

- In June of 2013, the Prime Minister and Democratic Party were overthrown by the Socialist Party.

- During the last 27 years, there have been more Albanians killed than during the Communist period in Albania (from 1945 to 1990).

The Government opposed Preçetaj's motion and argued that she asserted a change in personal circumstances and not a material change in country conditions. The Government further argued that her affidavit did not provide any dates or details regarding when her family lands were confiscated or when her uncles were killed; moreover, Preçetaj offered "no evidence

to corroborate her factual assertions about her family's newfound political involvement." The Government appended the State Department's 2016 Human Rights Report, which concluded that there were no reports of either politically motivated disappearances or of arbitrary arrests and detentions. The report found that protests have generally been peaceful and that the Albanian Democratic Party continues to hold a significant number of seats in the legislature. In fact, the Government contended that although Camaj's characterizations of Albania between 2005 and 2009 as "chaotic and abysmal" may be accurate, current conditions have vastly improved since that time.

On February 14, 2018, the Board, acting through a single member, denied Preçetaj's motion to reopen in a three-paragraph order. After recounting Preçetaj's prior proceedings and quoting the regulations setting forth the time and numerical limits on motions to reopen, the BIA ruled as follows:

> The respondent, a native and citizen of Albania, seeks to have her removal proceedings reopened on the basis of her fear of persecution in Albania. In support, the respondent has submitted an affidavit prepared by an individual knowledgeable about Albania; the respondent's own affidavit; and, a psychological report relating to the respondent's United States citizen children. However, the evidence submitted by the respondent does not reflect materially changed country conditions in Albania or show overall changed circumstances bearing on the respondent's claim. Further, the evidence fails to establish the respondent's prima facie eligibility for the relief that she is seeking. *See* 8 C.F.R. § 1003.2(c)(1); *see also Matter of Coelho*, 20 I&N Dec. 464 (BIA 1992). Accordingly the motion to reopen is denied.

Preçetaj's timely petition to this court followed.

## II.

### A. Standard of Review

We review the Board's denial of a motion to reopen immigration proceedings for abuse of discretion. *Trujillo Diaz v. Sessions*, 880 F.3d 244, 248 (6th Cir. 2018) (citing *Alizoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir. 2007)). All "[l]egal issues are reviewed de novo." *Harchenko v. INS*, 379 F.3d 405, 409 (6th Cir. 2004). "The Supreme Court has made clear that reopening is discretionary with the BIA and that the BIA retains broad discretion to grant or

deny such motions. Because the BIA has such broad discretion, a party seeking reopening or reconsideration bears a 'heavy burden.'" *Alizoti*, 477 F.3d at 451 (citation omitted). We will find an abuse of discretion if the Board's denial "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005) (citation omitted).

Under the applicable statutory and regulatory schemes, motions to reopen are subject to temporal and numerical limits. *See* 8 U.S.C § 1229a(c)(7)(A), (C); 8 C.F.R. § 1003.2(c). An asylum applicant is limited to one motion to reopen. 8 C.F.R. § 1003.2(c)(2). There is an exception to this numerical requirement for motions "based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. §1229a(c)(7)(A), (C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii). Because this is Preçetaj's second motion to reopen, it is subject to the "changed country conditions" exception.

## B. Discussion

Preçetaj argues that the BIA abuses its discretion when denying a motion to reopen by failing to address a petitioner's claims and proffered evidence of changed country conditions. She argues that it is "impossible" from a reading of the BIA order at issue "to discern the basis on which [she] is claiming changed circumstances, let alone why the evidence fails to establish changed circumstances. The order does not even make clear that [her] underlying claim for asylum is based on the political opinion strand of the asylum statute."

In determining whether the Board abused its discretion, we look only at "the basis articulated in the decision and [we] may not assume that the Board considered factors that it failed to mention in its opinion." *Daneshvar v. Ashcroft*, 355 F.3d 615, 626 (6th Cir. 2004). In the instant case, the Board's decision on the merits was limited to a one-page, five-sentence single paragraph. The first sentence simply states that Preçetaj is seeking reopening of her removal proceedings based on a fear of persecution. The second sentence lists the three pieces

of evidence Preçetaj appended to her motion. The last sentence merely states that the motion to reopen is denied. The Board's analysis is thus constrained to two sentences:

> [T]he evidence submitted by the respondent does not reflect materially changed country conditions in Albania or show overall changed circumstances bearing on the respondent's claim. Further, the evidence fails to establish the respondent's prima facie eligibility for the relief she is seeking.

In this two-sentence passage, the BIA failed to demonstrate that it evaluated or analyzed the evidence presented to it by Preçetaj. Instead, the BIA summarily concluded that Preçetaj's evidence was insufficient to demonstrate changed country conditions, without providing a sufficiently detailed analysis for its conclusion. "Although we do not require the Board's opinion to mention every piece of evidence before it or every logical element of a motion, it is nevertheless compelled to analyze and explain the basis on which it decides against a petitioner." *Lindor v. Holder*, 317 F. App'x 492, 498 (6th Cir. 2009) (internal quotations, alterations, and citation omitted); *see also Rodriguez-Lariz v. INS*, 282 F.3d 1218, 1227 (9th Cir. 2002) (remanding motion to reopen to apply for suspension of deportation when BIA did not engage in substantive analysis or articulate any reasons for its decision); *Arrozal v. INS*, 159 F.3d 429, 432–33 (9th Cir. 1998) (stating that the "BIA abuses its discretion when it fails to state its reasons and show proper consideration of all factors when weighing equities and denying relief" (internal quotation marks and emphasis omitted)).

We were confronted with a similar situation of a truncated BIA holding in *Lindor*, and we held that the Board's rationale was insufficient because "cursory, summary, or conclusory statements are inadequate in BIA decisions." 317 F. App'x at 498 (internal quotations, alterations, and citation omitted). Even more comparable to the instant case, in *Hanna v. Mukasey*, we noted that "[t]he BIA's decision is contained within one page, indeed one paragraph." 290 F. App'x 867, 872 (6th Cir. 2008). We held that this sort of summary, conclusory decision is arbitrary. *Id.* at 872–73 ("While the BIA has broad discretion to grant or deny motions to reopen, it does not have the discretion to make such decisions arbitrarily."). "The Board's discretion is broad but it is not unlimited. It may not exercise its discretion in a way that is arbitrary, irrational or contrary to law. Cursory, summary, or conclusory statements are inadequate." *Daneshvar*, 355 F.3d at 625–26.

We noted in *Lindor* that the Supreme Court has identified "at least three independent grounds on which the BIA might deny a motion to reopen—failure to establish a prima facie case for the relief sought, failure to introduce previously unavailable, material evidence, and a determination that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief which he sought." *Lindor*, 317 F. App'x at 498 (citing *Zhang v. Mukasey*, 543 F.3d 851, 854 (6th Cir. 2008)). "The BIA can elect to base its decision denying a motion to reopen on any independent ground, but once it elects the ground(s) on which to base its ruling, the BIA needs to analyze and explain the basis on which it decides against a petitioner." *Lindor*, 317 F. App'x at 499 (citing *Zhang*, 542 F.3d at 854 (quotations and alterations omitted)); *see also Zheng v. Att'y Gen. of the U.S.*, 549 F.3d 260, 266 (3rd Cir. 2008) ("But regardless of which of these multiple bases for denying a motion to reopen that the BIA is examining, when considering a motion to reopen the BIA must actually consider the evidence and argument that a party presents.") (internal quotation marks and citation omitted).

Here, "[b]y not addressing whether [Preçetaj], by [her] alleged evidence and arguments concerning [her uncles'] murder[s]" and additional issues concerning her family's political activities, "established a change in country conditions sufficient under applicable laws and regulations to excuse the time bar on motions to reopen . . . the BIA abused its discretion." *Lindor*, 417 F. App'x at 499; *see also Habchy v. Filip*, 552 F.3d 911, 915 (8th Cir. 2009) ("While it is well established that the BIA had broad discretion to grant or deny a motion to reopen, if it does not articulate a reasoned basis for rejecting the motion or fails to consider all the aspects of the petitioner's claim, it has abused its discretion.").

The Government argues that even if the Board's decision lacks an adequate explanation for its denial of Preçetaj's reopening motion, the error is harmless. We recognize the possibility that upon remand, when considering Preçetaj's evidence, the Board may again determine that Preçetaj has failed to demonstrate the requisite change in country conditions sufficient to overcome the reopening time bar. However, simply because the Board *may* reach the same result upon remand (and of course, it may not) does not render the Board's action "harmless." The Board must articulate the rationale for this decision—for instance, why it determined that Preçetaj's evidence is not compelling or why the Government's evidence carries greater

weight—particularly to allow for meaningful review by an appellate court. "Though it need not write an exegesis on every contention, the BIA must consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Trujillo Diaz*, 880 F.3d at 255 (quotation and citation omitted).

Here, the BIA has not articulated a basis to allow for meaningful review by this court. *Hanna*, 290 F. App'x at 873 ("This Court cannot engage in meaningful review of the BIA's decision if the Board neglects to give an adequate articulation . . . ."); *see also Haddadin v. Gonzales*, 245 F. App'x 595, 596–97 (9th Cir. 2007) (holding that a one-sentence denial of a motion to reopen on the basis of religious persecution, even though the sentence briefly detailed why lesser weight was accorded to the petitioner's claim by explaining that the petitioner's church "is one registered with and not officially hounded" by the government, "is inadequate. Because it is so very brief, it does not explain the IJ's reasoning in a way conducive to judicial review"); *Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005) ("[W]here the BIA entertains a motion to reopen in the first instance, and then fails to provide specific and cogent reasons for its decision, we are left without a reasoned decision to review.") It is not for this court to now make findings of fact or otherwise reweigh the evidence submitted by both parties—here, Preçetaj's statement and Camaj's submission, against that of the State Department reports—in determining whether Preçetaj has submitted sufficient evidence to satisfy the applicable immigration regulations. In fact, we have recently reaffirmed the longstanding rule in our circuit that "[i]n determining whether the BIA abused its discretion, we look only at 'the basis articulated in the decision and [we] may not assume that the [BIA] considered factors that it failed to mention in its opinion.'" *Trujillo Diaz*, 880 F.3d at 248 (quoting *Daneshvar*, 355 F.3d at 626); *see also Mickeviciute v. I.N.S.*, 327 F.3d 1159, 1162–63 (10th Cir. 2003) ("We cannot perform a meaningful review where the Board does not sufficiently articulate its reasoning. We are not at liberty to search the law and the record for reasoning to support the BIA's decision because a court may not uphold an agency action on grounds not relied on by the agency." (citations and internal quotation marks omitted)).[1]

---

[1]Given that we remand to the Board because of our inability to meaningfully review the Board's decision, we decline to address Preçetaj's argument concerning the appropriate weight to ascribe to unsworn evidence.

III.

For the reasons set forth above, we reverse and remand to the Board of Immigration Appeals for further proceedings consistent with this court's opinion.