NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0062n.06

No. 21-4200

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Feb 09, 2024
KELLY L. STEPHENS, Clerk

SAMUEL SUSTAITA-LOPEZ,

    Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

    Respondent.

)
)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW
FROM THE UNITED STATES
BOARD OF IMMIGRATION
APPEALS


OPINION

Before: SUTTON, Chief Judge; SUHRHEINRICH and MURPHY, Circuit Judges.

SUHRHEINRICH, Circuit Judge. Petitioner Samuel Sustaita-Lopez seeks review of the Board of Immigration Appeals' decision affirming the immigration judge's denial of his application for cancellation of removal and denying his motion to remand. We deny the petition for review.

**I.**

Sustaita-Lopez is a native and citizen of Mexico. He entered the United States in 1995 at the age of seventeen and returned to Mexico in 1999. He reentered the United States in 2002. On March 26, 2018, he received a notice to appear and was placed into removal proceedings under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen present in the United States without being admitted or inspected.

Sustaita-Lopez admitted the factual allegations in the notice to appear and conceded removability. On July 1, 2018, he filed a cancellation of removal application based on the hardship his removal would pose to his wife and children, who are all United States citizens. At the time

of the hearing, Xavier, Sustaita-Lopez's stepson, was eighteen and in college on a scholarship; Vanessa was twelve; and Samuel was thirteen. Sustaita-Lopez's children do not speak Spanish.

Sustaita-Lopez operates a masonry business. His wife, Ariela, is a licensed social worker. However, she does not work outside the home and homeschools their younger children. Ariela testified that the family relies on Sustaita-Lopez for financial and emotional support. She indicated that, were Sustaita-Lopez removed, Xavier would have to get a job and his grades might suffer as a result. Xavier testified that he "would most likely have to drop out of college . . . and get a job" to help out his family. Ariela explained that Samuel has severe allergies and Vanessa has suffered from a recurring urinary tract infection and sees a urologist. Ariela herself suffers from numerous medical conditions, including a family history of heart disease, GERD, a gastroesophageal-type disease, high cholesterol, endometriosis, and depression.

The immigration judge issued an oral decision finding that (1) Sustaita-Lopez's family would remain in the United States if he were removed (despite a contrary statement in his application); (2) the family's medical conditions are manageable; (3) the financial hardship the family would face is not exceptional; and (4) Sustaita-Lopez is eligible for an unlawful presence waiver and would not have to wait the ten years to return.

First, the immigration judge found that Sustaita-Lopez's family would not join him in Mexico since Sustaita-Lopez himself testified that he couldn't support them there, they don't speak Spanish, and the children would receive an inferior education. Next, noting that "[t]he medical conditions are probably the most significant consideration here," the judge found that the children would remain on Medicaid and receive the same level of treatment they were currently receiving. Furthermore, Vanessa's urinary issues were resolved and Samuel's allergies and asthma were controlled by his medication such that he was doing well in school and able to participate in sports.

As for Ariela, the immigration judge noted that she had surgery for endometriosis and would require a second procedure, but this was not "an immediate issue of substantial concern." The judge found that Ariela "has the ability" to control her heart condition, prediabetes, and high cholesterol "with medication and medical treatment." Ariela's mental conditions (panic attacks, depression, and anxiety), could also be treated, and Ariela "has the medical insurance."

The immigration judge acknowledged financial hardship, but concluded Sustaita-Lopez, a skilled mason, "has fairly transferable skills" if he moved to an area in Mexico with a substantial infrastructure. And the recent announcement of the United States-Mexico-Canada Agreement (USMCA) augured well for earning a reasonable wage in Mexico. The immigration judge also suggested that Ariela, a licensed social worker, could return to work and put the children in public schools. Last, the immigration judge found that Sustaita-Lopez was the beneficiary of an approved immediate relative petition.

Sustaita-Lopez appealed the immigration judge's decision to the Board and moved to remand based on new evidence. The Board issued a separate opinion, agreeing with the immigration judge's findings and conclusion that Sustaita-Lopez failed to demonstrate that his removal would cause an "exceptional and extremely unusual hardship" to a qualifying relative under 8 U.S.C. § 1229b(b)(1). The Board considered Sustaita-Lopez's new evidence, namely (1) the birth of his daughter, Dalilah in March 2020; (2) the fact that Michigan schools were not offering in-person instruction during the COVID crisis; and (3) Mexico's poor handling of the pandemic. The Board held that the new birth did not warrant remand because "the child was conceived and born after the commencement of removal proceedings, and, indeed, after an Immigration Judge had found [Sustaita-Lopez] removable and accepted his promise to voluntarily depart the United States." The Board took administrative notice of Michigan's then-recent

decision to lift restrictions on in-person schooling. Finally the board concluded that the impact of COVID in Mexico was "of only indirect relevance" to the family's hardship because Sustaita-Lopez was the only one relocating. The Board concluded that Sustaita-Lopez did not satisfy his "heavy burden" of demonstrating that the new evidence would likely change the result in his case and reinstated voluntary departure.

## II.

Sustaita-Lopez appeals the Board's dismissal of his appeal from the immigration judge's denial of his cancellation of removal as well as its denial of his motion to remand.

## A.

To qualify for cancellation of removal, the applicant must (1) have been in the United States for a continuous period of at least ten years; (2) be of good moral character; (3) not have any convictions of specified crimes; and (4) establish that his removal will result in "exceptional and extremely unusual hardship" to family members who are United States citizens or permanent residents. 8 U.S.C. § 1229b(b)(1). At issue here is the fourth requirement. Establishing that element requires Sustaita-Lopez to offer "evidence of harm to his spouse, parent, or child *substantially* beyond that which ordinarily would be expected to result" from his removal. *Araujo-Padilla v. Garland*, 854 F. App'x 646, 649 (6th Cir. 2021) (emphasis in original) (quoting *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 59 (B.I.A. 2001)); *see also* 8 U.S.C. § 1229a(c)(4)(A) (placing burden of proof on applicant). The hardship standard requires the agency to consider the individual and aggregate effects of "the age, health, and circumstances of the qualifying family members, including how a lower standard of living or adverse country conditions . . . might affect those relatives." *In re Gonzalez Recinas*, 23 I & N. Dec. 467, 468 (B.I.A. 2002). However,

the latter two factors "generally will be insufficient in themselves" to meet that standard. *Monreal-Aguinaga*, 23 I. & N. Dec. at 63–64.

We have jurisdiction to review the Board's decision that the historical facts do not meet the requisite level of the "hardship" standard to qualify for cancellation of removal under § 1229b(b)(1)(D). *Singh v. Rosen*, 984 F.3d 1142, 1154 (6th Cir. 2021); *Hernandez v. Garland*, 59 F.4th 762, 763, 766–67 (6th Cir. 2023) (discussing *Singh*). The appropriate standard of review is still an open question though. In *Singh*, we identified but did not adopt three possible standards—clear-error, substantial-evidence, or compelling evidence—because the petitioner did not meet his burden under any standard. 984 F.3d at 1154; *Hernandez*, 59 F.4th at 771 (same). We need not decide that question here either. *See Singh*, 984 F3d at 1154.

We review the final agency decision, the Board's separate opinion affirming the immigration judge. *See Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). We also review the immigration judge's decision to the extent the Board adopted its reasoning. *Id*.

*First*, Sustaita-Lopez argues that the immigration judge and the Board considered the hardship factors individually but not in the aggregate. The record belies that assertion. Only after considering the *Recinas* factors—Ariela and the children's medical conditions and access to Medicaid, the children's education, and "the financial disruption" and "emotional distress" Sustaita-Lopez's removal would cause—did the immigration judge conclude that "for all of these reasons," Sustaita-Lopez did not meet the onerous burden of establishing hardship. On review, the Board acknowledged that Ariela and the children would experience a decline in their standard of living, but agreed with the immigration judge that Sustaita-Lopez did not establish the "[e]conomic detriment and emotional hardship from family separation" that would be considered "exceptional and extremely unusual" under § 1229b(b)(1)(D). The Board identified several

reasons why: (1) both Ariela and Xavier could find jobs; (2) Ariela and the children could remain on Medicaid; and (3) Sustaita-Lopez is the beneficiary of an approved immediate-relative visa petition.

*Second,* Sustaita-Lopez contends that the agency incorrectly applied its own precedent. We do not agree that the immigration judge's ruling "stands in direct contradiction to" *Recinas*. The applicant in that case met the hardship standard because she was a single mother with six children and no family in her native country and she would have been unable to find adequate employment or housing. *Recinas,* 23 I & N. Dec. at 471. Those facts "distinguish[ed] her case from many other cancellation of removal claims." *Id.* The facts in this case distinguish it from *Recinas.* Ariela, Sustaita-Lopez, and Xavier are all capable of earning income to support the family. And the family will have access to adequate medical care and public schools. In short, the agency "consider[ed] the totality of the burden on the entire [Sustaita-Lopez] family," *see id.* at 472, and did not err in applying its precedent. We find no basis for reversal under any of the enumerated standards of review.

Nor did the agency fail to appreciate Ariela's medical conditions when assessing financial hardship. As noted above, the immigration judge considered Ariela's numerous conditions—physical and mental—and concluded that they are manageable with treatment, and that she has Medicaid coverage.[1] In any event, Sustaita-Lopez did not make this argument to the Board and has therefore forfeited it. *See* 8 U.S.C § 1252(d)(1); *Santos-Zacaria v. Garland*, 598 U.S. 411, 417–19 (2023).

---

[1] Sustaita-Lopez claims that *Hernandez* supports his claim. There the immigration judge found that the petitioner's removal would cause exceptional and extremely unusual hardship where the wife's health prevented her from working and the petitioner, in addition to working, "cared for her and the household." 59 F 4th at 765. Sustaita-Lopez is wrong. For starters, the hardship determination was not at issue on appeal in *Hernandez*. Further, the facts of this case, which we do not have jurisdiction to review, are different. Here the immigration judge held that Ariela has the ability to care for her physical and mental conditions.

*Third*, Sustaita-Lopez claims that the Board legally erred in affirming the immigration judge's finding that he would qualify for a waiver under § 1182(a)(9)(B)(v) because his entry in 2002 was his *second* illegal presence for more than one year, which means that he is permanently barred from reentry under § 1182(a)(9)(C)(i)(I) (making a noncitizen who enters the United States without admission after accruing at least one year of unlawful presence inadmissible). The immigration judge found that Sustaita-Lopez would be barred for under ten years. *See* 8 U.S.C. § 1182(a)(9)(B)(i)(I) & (II) (voluntary departure of noncitizen may trigger the three- or 10-year bar to reentry for "unlawful presence"). But Sustaita-Lopez did not challenge the immigration judge's finding to the Board, so it is forfeited. *Id*. § 1252(d)(1); *Santos-Zacaria* 598 U.S. at 417-19. The Board did not, as Sustaita-Lopez suggests, make a finding; it merely noted the immigration judge's determination.

*Fourth*, Sustaita-Lopez contends that the Board erred in affirming the immigration judge's decision because it "is rife with speculation, conjecture, and a mischaracterization of the record." None of his accusations bear weight. His attack on the immigration judge's finding that Xavier's biological father owes Ariela "over $100,000" in child support (instead of stating that exact amount is $156,000) is without merit, because as the Board held, "the precise extent of that delinquency does not appreciably impact the hardship calculus in this case because it is unlikely to be affected by [Sustaita-Lopez's] removal." That's true. Ariela testified that she has never received any child support from Xavier's father. The immigration judge also did not "fail[] to meaningfully consider how Ariela's abandonment of her fulltime duties at home would be impacted by" her "litany of medical conditions." As discussed above, the immigration judge found that each of Ariela's physical and mental conditions are "treatable" and manageable, and that public schooling was a workaround for home-schooling. ("The children could go back to public schools and be

homeschooled on the values at home."). Nor did the immigration judge impermissibly "speculat[e] respecting the USMCA." The immigration judge noted that "wages in Mexico are substantially below those in the United States" and that Sustaita-Lopez's job prospects were uncertain and stated simply that the approval of the USMCA "tend[ed] to suggest that" Sustaita-Lopez would "be able to find something better than $9 a day work."[2] As the Board put it, "the judge's reference to the USMCA was nothing more than a recognition that [Sustaita-Lopez's] job prospects in Mexico are not necessarily as gloomy as he would have the court believe, given his experience as a skilled mason and entrepreneur in the United States." To the extent that Sustaita-Lopez claims the Board "neglected the copious background evidence" establishing that he will face "poverty and serious material deprivation at every level," he forfeited the argument by failing to raise this argument on administrative appeal. 8 U.S.C. § 1252(d)(1); *Santos-Zacaria*, 598 U.S. at 417–19. He also failed to develop any argument on appeal, other than a blanket citation to the "Mexico 2017 Human Rights Report."

B.

To prevail on a motion to remand, a petitioner must show that the new evidence "would likely change the result in the case." *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 320–21 (6th Cir. 2018) (quoting *Matter of Coelho*, 20 I. & N. Dec. 464, 473 (B.I.A. 1992)). This a "heavy burden." *Id.* at 320 (quotation omitted).

When reviewing the Board's denial of a motion to remand, we look for abuse of discretion. *Precetaj v. Sessions*, 907 F.3d 453, 457 (6th Cir. 2018). We review allegations of due process violations *de novo*. *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998).

---

[2] Sustaita-Lopez says nothing in the record supports this speculation and that he provided evidence to the contrary, citing a "Synopsis on the [Mexican] Economy" from a government publication. He offers no explanation how the document demonstrates that the immigration judge's comment was speculation, and we cannot discern any.

First, Sustaita-Lopez asserts that he did not receive a meaningful review because the Board took administrative notice of a website addressing Michigan's in-schooling restrictions, which had lifted after the remand motion was filed. But the Board may take administrative notice of commonly known facts such as "[c]urrent events" or the "contents of official documents." 8 C.F.R. § 1003.1(d)(3)(iv). *See Vasha v. Gonzales*, 410 F.3d 863, 874 n.5 (6th Cir. 2005) (noting that we have upheld the practice); *Koita v. Mukasey*, 314 F. App'x 839, 844 (6th Cir. 2009) (approving Board's taking administrative notice of recent elections).[3] It almost goes without saying that the reopening of in-person instruction in public schools was an enormously important event in the lives of Michigan citizens, properly communicated on a Michigan government website. Nothing in the regulation suggests that only federal reports qualify. No due process violation here.[4]

Next, Sustaita-Lopez criticizes the Board for "fail[ing] to provide a cumulative analysis of the material new hardship"—the birth of his daughter Dalilah Sustaita on March 10, 2020—and how it would add to "the complex web of existing hardship." The record does not support this assertion. The timing of the child's conception, after the immigration judge had denied cancellation and granted voluntary departure—was critical to the Board's analysis. *See Matter of Correa*, 19 I & N. Dec. 130, 134–35 (B.I.A. 1984) (noting that equities such as children that are acquired after a final order of deportation "are entitled to less weight" than to children born before removal proceedings began). The Board also observed that a counterfactual—a severely ill or disabled child—"when viewed in conjunction with other factors," might have necessitated remand.

---

[3] The Board's inability to make fact findings does not apply to a motion to remand. 8 U.S.C. § 1229a(c)(7)(B); 8 C.F.R. § 1003.2(c)(1).

[4] Sustaita-Lopez's argument that the Board provided an incorrect website address is without merit. The website address is correct; but the information changed since the Board accessed it on October 20, 2021.

Coupled with its findings that Sustaita-Lopez's other children could attend in-person public schools, so that Ariela can earn income, it is clear that the Board carefully evaluated the new evidence in light of all of the hardship findings. In short, Sustaita-Lopez failed to satisfy the "heavy burden" of showing that his new evidence would likely alter the outcome here. The Board did not abuse its discretion.

Sustaita-Lopez's final contention—that the Board committed legal error by having his remand motion reviewed by a single Board member instead of a three-member panel, and declining to explain why, is without merit. *See Murillo-Reyes v. Barr*, 821 F. App'x 423, 427–28 (6th Cir. 2020).

## III.

For the reasons set forth above, we deny the petition for review and affirm the Board's dismissal of Sustaita-Lopez's motion to remand.