NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0065n.06
Case No. 19-4084

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 15, 2024
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| FARIS ZOHAIR YOUSIF aka Faris Steve Yousif, | ) ) ) | |
| Petitioner, | ) ) | ON PETITION FOR REVIEW FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS |
| v. | ) ) | |
| MERRICK B. GARLAND, Attorney General, | ) ) | OPINION |
| Respondent. | ) ) | |

Before: SUTTON, Chief Judge; STRANCH and MATHIS, Circuit Judges.

MATHIS, J., delivered the opinion of the court in which SUTTON, C.J., joined in full, and STRANCH, J., joined in part. STRANCH, J. (pp. 16–23), delivered a separate opinion concurring in all but Part IV.B of the majority opinion.

**MATHIS, Circuit Judge.** Faris Zohair Yousif petitions this court to review a final order of the Board of Immigration Appeals ("BIA") adopting and affirming an Immigration Judge's ("IJ") decision denying him deferral of removal under the Convention Against Torture ("CAT"). Yousif also asks us to review the BIA's denial of his motion to remand for consideration of new evidence. For the reasons below, we deny the petition for review.

**I.**

Yousif, a native and citizen of Iraq, entered the United States as a refugee in 1981 when he was four years old and was granted permanent resident status the following year. In 2006, he was convicted by a Michigan state court of the felony offense of obtaining a controlled substance by

fraud.  Three years later, he was convicted of another felony—possession with intent to deliver a controlled substance.

On July 27, 2011, the Department of Homeland Security charged Yousif with removability under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony relating to illicit trafficking of a controlled substance, and under 8 U.S.C. § 1227(a)(2)(B)(i) for having been convicted of a controlled substance offense.  The next day, DHS lodged an additional charge of removability against Yousif under 8 U.S.C. § 1227(a)(2)(A)(ii) for having been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct.  On August 31, 2011, Yousif conceded these allegations and the IJ found him removable.

However, Yousif was not deported.  Instead, on June 21, 2017, Yousif moved the immigration court to reopen his case for consideration of an application for deferral of removal under the CAT.[1]  In his separately filed CAT application, Yousif claimed that he is a Chaldean Christian and that, if deported to Iraq, it was more likely than not that he would be tortured by the Islamic State of Iraq and Syria ("ISIS"), Sunni terrorist militia groups, or Iraqi security forces because of his religion, ties to the United States, criminal record, and the fact that he speaks very little Arabic.  On August 21, 2017, the IJ reopened the removal proceedings.

## II.

### A.  The IJ's Evidentiary Rulings

Yousif's hearing took place on December 11, 2017, and January 30, 2018.  In support of Yousif's CAT application, he proffered, among other things, declarations from three purported expert witnesses: Mark Lattimer, the executive director of Minority Rights Group International,

---

[1] An applicant, such as Yousif, who has been convicted of a "particularly serious crime" is ineligible for withholding of removal under the CAT.  *See* 8 U.S.C. § 1231(b)(3)(A)–(B).  However, an ineligible applicant who otherwise merits CAT protection may receive deferral of removal.  8 C.F.R. § 1208.17(a).

who has worked with the Ceasefire Centre for Civilian Rights to monitor human rights abuses in Iraq; Rebecca Heller, a lawyer and the director and founder of the International Refugee Assistance Project; and Daniel Smith, a researcher specializing in Iraq. Yousif also presented live testimony from Smith, his father—John Yousif, and himself. In opposition, DHS presented its own expert opinions, including a declaration from Dr. Douglas Ollivant, former director for Iraq at the National Security Council, and the declaration and testimony of Dr. Michael Rubin, a resident scholar in foreign and defense policy studies at the American Enterprise Institute. Finally, the parties presented documentary evidence, including the U.S. State Department's 2016 International Religious Freedom Report for Iraq ("2016 Country Report"), which discussed human rights abuses committed by ISIS, Iraqi security forces, and Popular Mobilization Forces ("PMFs").

DHS objected to the declarations of Smith and Heller, arguing that they should not be designated as expert witnesses. As to Smith, DHS argued that his curriculum vitae gave "no indication as to how he obtained" his expertise, and thus, there was "no reason to believe" that he had enough knowledge to "testify reliably." A.R. at 497. And as to Heller, DHS argued that her expertise was that of an attorney "running clinics and supervising law students," not Iraq. *Id.* at 489. The IJ agreed and admitted Smith's and Heller's declarations as percipient witnesses. DHS did not object to the designation of Lattimer's declaration as an expert declaration.

## B. IJ Denies Yousif's Application for CAT Deferral

On March 20, 2018, the IJ issued an order denying Yousif's CAT application. In doing so, the IJ relied on *Matter of J-F-F-*, 23 I. & N. Dec. 912, 918 n.4 (A.G. 2006), to support its holding that, based on the totality of the evidence, Yousif had not met his burden of establishing that each event in his hypothetical chain of events made it more likely than not that he would be tortured by, or with the acquiescence of, the Iraqi government if he was deported to the country.

At the outset, the IJ stated that it had "considered all admitted evidence in its entirety," A.R. at 442, and that it found Yousif, his father, Smith, and Dr. Rubin were credible. Nonetheless, the IJ determined that DHS's declarations were "far more persuasive" because they were admitted as expert declarations and were "based on first-hand knowledge of and experiences in Iraq." *Id.* at 458. The IJ specifically highlighted Dr. Rubin's and Dr. Ollivant's testimony, which suggested that "the likelihood of detained individuals being tortured is low" because, although returnees may be questioned and even detained, "such detention is [only] meant to determine whether individuals have ties to the former [Saddam Hussein] regime, whether they had defected from the Iraqi military, or whether they have previously committed a crime inside Iraq." *Id.* (emphasis omitted).

The IJ also credited the testimony of Dr. Ollivant that "Iraqi Christians . . . should not be concerned about their 'Westernization' because the fact that they were in the West 'makes them almost certainly innocent' of any connection to [ISIS]." *Id.* at 459. And both Dr. Ollivant and Dr. Rubin had "emphasize[d] that Western influences are not unwelcome or uncommon in Iraq." *Id.* The IJ also reasoned that "the Iraqi government's focus is identifying, prosecuting, and detaining [] members of [ISIS] and those suspected of supporting [ISIS]," not individuals convicted of crimes in the United States. *Id.* And as for potential abuses by the PMFs, the IJ took note of Dr. Rubin's, Dr. Ollivant's, and the 2016 Country Report's statements suggesting that "the Iraqi government is investigating [their] abuses" and that the end of the war against ISIS "meant increasing accountability" for the organization. *Id.*

### C. Yousif Appeals to BIA and Requests Remand for Consideration of New Evidence

On April 2, 2018, Yousif appealed the IJ's decision to the BIA. He also moved to remand the case back to the IJ based on "new, material evidence" concerning "significantly worsening conditions in Iraq." *Id.* at 39, 68. In support of his motion to remand, Yousif attached: (1) the

U.S. State Department's 2018 Country Reports for Human Rights Practices for Iraq ("2018 Country Report"); (2) a State Department Iraq Travel Advisory and Security Alert for the U.S. Embassy in Baghdad; (3) the U.S. State Department's 2017 International Religious Freedom Report; (4) various news articles and reports; and (5) new declarations from Lattimer, Smith, Heller, Scott Portman—the Middle East regional director for Heartland Alliance International, Belkis Wille—a senior researcher for Human Rights Watch, and Colonel Steven Miska—a retired Colonel from the United States Army.

On October 10, 2019, the BIA dismissed Yousif's appeal and denied his motion to remand. This timely petition for review followed.

### III.

Where, as here, the BIA issues its own opinion and adopts the IJ's reasoning, we review both decisions. *Umaña-Ramos v. Holder*, 724 F.3d 667, 670 (6th Cir. 2013). "Questions of law involving immigration proceedings are reviewed de novo," *Ramaj v. Gonzales*, 466 F.3d 520, 527 (6th Cir. 2006), while we review factual challenges for substantial evidence, *see Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020). As to the BIA's denial of a motion to remand, we review that decision for an abuse of discretion. *Marqus v. Barr*, 968 F.3d 583, 592 (6th Cir. 2020).

### IV.

#### A. Denial of CAT Relief

Yousif challenges the denial of his request for CAT relief on several grounds. First, he argues that the IJ and BIA violated his due-process rights when they did not designate Smith and Heller as expert witnesses. Second, he asserts that the IJ's and BIA's decisions did not satisfy the substantial-evidence standard. Third, he maintains that the BIA misapplied the "particularized threat" standard. Fourth, he avers that the IJ and BIA failed to consider the risk of torture in the

aggregate. And finally, he argues the IJ and BIA erred in relying on *Matter of J-F-F-*. We address each argument in turn.

1. Whether the BIA Violated Yousif's Due-Process Rights

In immigration proceedings, evidentiary rulings "are not subject to the Federal Rules of Evidence." *Singh v. Ashcroft*, 398 F.3d 396, 406–07 (6th Cir. 2005) (citing *Dallo v. INS*, 765 F.2d 581, 586 (6th Cir. 1985)). Thus, we generally review evidentiary rulings by IJs only for due-process violations. *Id.* at 407 (citations omitted). Under that standard, we have repeatedly affirmed the designation of Smith and Heller as percipient witnesses in immigration proceedings. *See, e.g.*, *Al-Koorwi v. Barr*, 837 F. App'x 323, 331–32 (6th Cir. 2020); *Francis v. Barr*, 781 F. App'x 495, 500 (6th Cir. 2019). As much as Yousif may disagree with the IJ's classification of Smith and Heller as percipient, rather than expert, witnesses, he does not explain how that conclusion violates due process here.

Yousif argues that this conclusion "contradicts other BIA decisions," including several that he attached to his BIA appellate brief. However, many of the cases Yousif cites do not mention Smith or Heller, and although it is true "that similarly-situated individuals should be treated similarly," *Kiegemwe v. Holder*, 427 F. App'x 473, 482 (6th Cir. 2011), we have not consistently found that IJs should have treated Smith and Heller as expert witnesses. *See, e.g.*, *Al-Koorwi*, 837 F. App'x at 331–32 (affirming rejection of Smith and Heller as experts); *Solaka v. Wilkinson*, 844 F. App'x 797, 800 (6th Cir. 2021) (same); *Faso v. Barr*, 823 F. App'x 321, 324–25 (6th Cir. 2020) (same); *Francis*, 781 F. App'x at 500 (same). Therefore, we find no due-process violation as to the designation of Smith and Heller as percipient witnesses.

2.  Whether Yousif Was Entitled to CAT Relief

Next, we consider the IJ and BIA's finding that Yousif did not meet his burden for CAT relief. Yousif requests we reverse on multiple grounds. We reject each contention.

To obtain CAT relief, the applicant bears the burden of establishing that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). "Torture" is an "extreme form of cruel and inhuman treatment" that is "specifically intended to inflict severe physical or mental pain or suffering." *Id.* § 1208.18(a)(2), (a)(5). To qualify for protection, such torture must be "inflicted by, or at the instigation of, or with the consent or acquiescence of," a person "acting in an official capacity." *Id.* § 1208.18(a)(1). A showing of a "consistent pattern of gross, flagrant, or mass violations of human rights in a particular country" is insufficient. *Matter of S-V-*, 22 I. & N. Dec. 1306, 1313 (BIA 2000), *abrogated on other grounds by Amir v. Gonzales*, 467 F.3d 921, 927 (6th Cir. 2006). Rather, the applicant must demonstrate that he faces a "particularized threat of torture." *Almuhtaseb v. Gonzales*, 453 F.3d 743, 751 (6th Cir. 2006) (quoting *Castellano-Chacon v. INS*, 341 F.3d 533, 551 (6th Cir. 2003)). The IJ and BIA are required to consider all evidence relevant to possible future torture. 8 C.F.R. § 1208.16(c)(3).

Factual challenges to the BIA's denial of an application for CAT protection are reviewed under a substantial-evidence standard, which is "highly deferential." *Nasrallah*, 140 S. Ct. at 1692. Using this standard, the BIA's findings must stand "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)). Thus, "[w]hen the evidence could reasonably point in either direction . . . we must defer to the agency's choice." *Bassil Yousif v. Garland*, 53 F.4th 928, 934 (6th Cir. 2022) (alteration in original) (quoting *Shafo v. Wilkinson*, 844 F. App'x 791, 796 (6th Cir. 2021)).

After considering the parties' evidence, the IJ determined that Yousif had not met his burden to establish that he was entitled to CAT relief. The IJ based its decision largely on the expert declarations that DHS introduced, which asserted that Yousif would not face an increased risk of torture based on his lack of Iraqi identification, religion, ties to the United States, criminal record, or language skills. Although Yousif's declarations disputed those offered by DHS, the IJ gave "greater weight" to the declarations of DHS's experts because they had been "deemed to be experts and because they [were] based on first-hand knowledge of and experiences in Iraq." A.R. at 458. The BIA agreed based on the "totality of the record" presented to the IJ. *Id.* at 3.

"An Immigration Judge has broad discretion in conducting his or her hearings." *Francis*, 781 F. App'x at 500 (internal quotation marks omitted). And "[t]he question of what probative value or weight to give to expert evidence is a determination for the [IJ] to make as the fact finder." *Matter of M-A-M-Z-*, 28 I. & N. Dec. 173, 177 (BIA 2020); *see also* 8 C.F.R. § 1003.1(d)(3)(i). Thus, we generally "defer to the IJ's factual findings" when it gives greater weight to DHS's "own credible body of [expert] evidence" based on reasoned analysis. *Marqus*, 968 F.3d at 588–89. And here, the record shows that the IJ considered the parties' positions and appropriately determined which evidence to admit and how much weight to afford it. Therefore, we find no error.

In response, Yousif makes several arguments. *First*, he argues that we should reverse the IJ's and BIA's decisions because country conditions in Iraq are now "qualitatively different" from what they were in 2017, when ISIS was defeated. Yousif summarizes these developments in his brief. However, our review of a BIA's decision on an order of removal is constrained to the "administrative record on which the order of removal is based." *Jashari v. Sessions*, 722 F. App'x

481, 489 (6th Cir. 2018) (quoting 8 U.S.C. § 1252(b)(4)(A)). Because the IJ and BIA did not have the opportunity to consider this new evidence, we will not consider it either.

*Second*, Yousif cites *Matter of H-L-H-*, 25 I. & N. Dec. 209 (BIA 2010), and *Dieng v. Holder*, 698 F.3d 866 (6th Cir. 2012), to argue that the BIA failed to treat the U.S. State Department's reports with sufficient weight, including the 2018 Country Report and the 2017 International Religious Freedom Report in support of his motion to remand. These cases support the proposition that State Department reports are "highly probative evidence and are usually the best source of information on conditions in foreign nations." *Matter of H-L-H-*, 25 I. & N. Dec. at 213; *Dieng*, 698 F.3d at 872 ("State Department reports are generally the best gauge of conditions in foreign countries." (citing *Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004)). But we cannot consider these reports as part of our review of the denial of Yousif's CAT application because Yousif proffered these reports to the BIA as part of his motion to remand, not in support of his CAT application to the IJ. *See Jashari*, 722 F. App'x at 489.

*Third*, Yousif relies on *Wisam Yousif v. Lynch*, 796 F.3d 622 (6th Cir. 2015), to assert that his "status as a Christian alone entitles him to" CAT relief. We have since "clarified that our statement in [*Wisam*] *Yousif* did not 'establish an entitlement to withholding of removal for all time for all Chaldean Christian Iraqis." *Abdulahad v. Barr*, 838 F. App'x 126, 134 (6th Cir. 2020) (quoting *Marqus*, 969 F.3d at 588). Neither the IJ nor the BIA was obligated to apply such a categorical approach to Yousif's claim.

*Fourth*, Yousif argues that the IJ's and BIA's reliance on DHS's expert reports was misplaced because these reports lack citations, are outdated, and ignore Yousif's "overwhelming" evidence. In other words, Yousif asks us to reweigh the evidence. Our precedent precludes us from doing so. *See Valadez-Lara v. Barr*, 963 F.3d 560, 569 (6th Cir. 2020) ("Reweighing the

evidence 'is not part of this Court's role' under our substantial-evidence standard of review for the [BIA's] findings of fact." (quoting *Lin v. Holder*, 565 F.3d 971, 978 (6th Cir. 2009))).

*Fifth*, Yousif argues that the BIA's decision "contradicts recent decisions from the BIA and the IJ granting CAT relief . . . on nearly identical claims." This does little to move the needle for Yousif because cases from this court that are even more recent dealing with nearly identical claims have affirmed the BIA's decisions to deny CAT relief. *See Marqus*, 968 F.3d at 588–89; *Bassil Yousif*, 53 F.4th at 934–35.

In sum, Yousif has not shown that a reasonable adjudicator would be compelled to conclude to the contrary of the IJ's and BIA's decisions.

3. <u>Whether the BIA Misapplied the "Particularized Threat" Standard</u>

Yousif also argues that the BIA incorrectly required him to show that a *specific* actor had the intent to torture him instead of the controlling "particularized threat" standard. But that is not what the BIA did. In its order denying Yousif's motion to remand, the BIA concluded that Yousif's newly admitted evidence did not "reflect that an Iraqi official, or any alleged persecutor, would specifically intend to inflict severe pain or suffering onto" him. Yousif reads this statement to mean that the BIA required him to identify the *exact* person who would intentionally torture him. We do not share this reading. Rather, a fair reading of the BIA's decision demonstrates that the BIA was speaking of Iraqi officials and alleged persecutors in a general sense.

4. <u>Whether the IJ and BIA Failed to Consider the Risk of Torture in the Aggregate</u>

The "aggregation rule" requires immigration courts to consider the cumulative risk of torture to a CAT applicant. *Marqus*, 968 F.3d at 589. Because of this rule, "an applicant alleging probable torture from independent sources 'need not demonstrate that the probability of torture by one of the entities,' or for one of the reasons, 'taken alone, exceeds 50%.'" *Id.* (quoting *Shakkuri*,

780 F. App'x at 291). Rather, the applicant must show "the cumulative probability of torture by all the entities,' or for all reasons, 'exceeds 50%.'" *Id.* (brackets omitted).

The record demonstrates that the IJ conducted an aggregate analysis. The IJ stated that it had "considered all admitted evidence in its entirety," A.R. at 442, and it summarized the parties' evidence concerning the risks faced by Chaldean Christian returnees who previously lived in the United States, who had family members who served in the American military, who had no family members in Iraq, who had criminal records, and who lacked Iraqi identification. The IJ then concluded that, based on the totality of this evidence, Yousif had not met his burden to prove that it is more likely than not that he would be tortured by or with the acquiescence of the Iraqi government. The BIA also noted Yousif's concerns about whether the IJ had considered the aggregate risk of torture. The BIA explained that it had "examin[ed] all those factors" and that it concurred with the IJ that Yousif had "not shown a particularized threat of torture to entitle him to protection from removal." *Id.* at 5. Nothing in this record suggests that the IJ or BIA failed to adhere to the aggregation rule.

5. Whether the IJ and BIA Erred in Relying on *Matter of J-F-F-*

Yousif also argues that the IJ erred as a matter of law by relying on the decision of *Matter of J-F-F-*, in which the Attorney General opined that a petitioner may not establish a claim for CAT relief merely by stringing together a series of suppositions to show that it is more likely than not that torture will result where the evidence does not establish that each step in the hypothetical chain of events is more likely than not to occur. 23 I. & N. Dec. 912, 917–18 (A.G. 2006).

Contrary to Yousif's assertion, the IJ appropriately relied on *Matter of J-F-F-* because Yousif's contentions involved at least one hypothetical chain of supposition. *See Al-Koorwi*, 837 F. App'x at 330–31 (upholding BIA's reliance on *J-F-F-* because petitioner's claims were factually

"interdependent"); *Marqus*, 968 F.3d at 590 (declining to reject BIA's reliance on *J-F-F-*).  For example, Yousif relied on Smith's testimony to argue that he faced an increased risk of torture because: (1) he lacks Iraqi identification; (2) returnees lacking such identification are faced with suspicion by the Iraqi government; (3) this suspicion has led to returnees being detained "for extended periods of time"; (4) this detainment can be extended where the returnee does not have a family member "to help facilitate [] the process"; and (5) at some point during the detention, the returnee will be tortured.  A.R. at 544–46.  The IJ referenced this chain in its opinion and found, based on the declarations of DHS's experts, that Yousif "ha[d] not met his burden to prove that it is more likely than not that he will be tortured by the Iraqi government."  *Id.* at 460 (emphasis omitted).  We see no reason to differ from this conclusion.

Because Yousif has failed to show that the IJ and BIA committed factual or legal error, we affirm their denial of Yousif's CAT application.

## B.  Denial of Motion to Remand

Yousif argues that the BIA abused its discretion when it denied his motion to remand to present new evidence to the IJ.  For the following reasons, we reject these contentions.

"A motion to remand for the purpose of presenting additional evidence must conform to the same standards as a motion to reopen and will only be granted if the evidence was previously unavailable and would likely change the result in the case."  *Matter of L-A-C-*, 26 I. & N. Dec. 516, 526 (BIA 2015).  There are "'at least' three independent grounds on which the BIA might deny a motion to reopen": (1) "failure to establish a prima facie case for the relief sought"; (2) "failure to introduce previously unavailable, material evidence"; and (3) "a determination that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief which he sought."  *Ilic-Lee v. Mukasey*, 507 F.3d 1044, 1049 (6th Cir. 2007) (quoting

*INS v. Doherty*, 502 U.S. 314, 323 (1992)).  When the BIA "denies relief on a particular ground, we review only that ground."  *Trujillo Diaz v. Sessions*, 880 F.3d 244, 249 (6th Cir. 2018).

Yousif proffered several pieces of evidence in support of his motion to remand, including U.S. State Department reports, a 2019 travel advisory and security alert, media articles, and declarations from old and new witnesses.  The BIA denied the motion because it found the evidence insufficient to establish a prima facie case for CAT relief.  In particular, the BIA observed that the State Department reports and other documentary evidence were "largely cumulative of evidence previously submitted"; that the new declarations were "substantially similar to" those Yousif already submitted and did not contain information that was previously unavailable; and that the travel advisory and security alert did not establish that "Iraqi officials, or affiliated militias, are targeting or seeking to torture Chaldean Christians or returnees from the United States."  A.R. at 6–7.  We agree with the BIA.

The totality of Yousif's new evidence does not demonstrate that the BIA abused its discretion.  The 2016 Country Report, along with the other evidence he initially submitted, discussed human rights abuses committed by Iraqi security forces and the PMFs against various individuals, including religious minorities.  Yousif's new documentary evidence, including the 2017 International Religious Freedom Report, 2018 Country Report, the 2019 travel advisory and security alert, and various media articles are largely cumulative.  And Yousif's new declarations fare no better.  The declarations of Lattimer, Smith, and Heller do not show a change in country conditions that would result in a particularized risk of persecution against Yousif.  The declarations of Wille, Portman and Miska are equally cumulative and appear to contain information that was available at the time of the IJ's and BIA's decisions.  At best, Yousif's evidence shows incremental changes to a country that is already volatile, and "incremental changes in volatile atmospheres do

not show materially changed country conditions" meriting remand for reconsideration of CAT relief. *Bassil Yousif*, 53 F.4th at 937 (internal quotation marks omitted).

Yousif cites *Marqus* to argue that remand is mandatory. We disagree. In *Marqus*, we remanded the case back to the BIA because the BIA provided an overly cursory rationale for denying the petitioner's motion to remand. *See* 968 F.3d at 592–93. There, the BIA acknowledged that the petitioner's new evidence "might help" his argument for CAT relief on remand, but it neither specified this evidence nor explained "what about his claims, the new evidence, or the Government's evidence led to its decision to deny remand." *Id.* at 593. For this reason, we ordered the BIA to either explain its conclusion or reconsider its position. *Id.* Here, in contrast, the BIA mentioned Yousif's new evidence and explained why each category of evidence was insufficient to merit remand. Thus, *Marqus* does not require remand in this case. *See also Bassil Yousif*, 53 F.4th at 937 (finding the BIA's explanation for denying a remand motion sufficient where the BIA cited the "many reports" the petitioner submitted in support of his motion to remand, and "articulated why the evidence was insufficient (i.e., it's cumulative and doesn't establish a particularized threat)."); *Makdesion v. Garland*, No. 22-3436, 2023 WL 2972548, at \*2 (6th Cir. Apr. 17, 2023) (relying on *Marqus* for the proposition that "when the BIA inadequately explains its decision to the point where we cannot determine whether the BIA abused its discretion or acted arbitrarily and capriciously, we must remand to the BIA to explain its reasoning in the first instance"); *Al-Awad v. Garland*, No. 23-3020, 2023 WL 6601870, at \*7 (6th Cir. Oct. 10, 2023).

Finally, Yousif points to a September 2020 decision by the same IJ who denied him CAT relief to argue that he is entitled to remand. The IJ reviewed the same evidence Yousif presents here to justify granting CAT relief to another Iraqi applicant. However, Yousif did not present this case to the IJ or the BIA. Thus, the September 2020 decision constitutes "extra-record

- 14 -

evidence" that we will not consider. *Al-Awad*, 2023 WL 6601870, at *8 (declining to consider the same September 2020 decision for the same reason).

**V.**

For the foregoing reasons, we **DENY** Yousif's petition for review.

**JANE B. STRANCH, Circuit Judge, concurring in part and dissenting in part.** Faris Yousif is a Chaldean Christian who has been ordered removed to Iraq. He moved to defer that removal and, later, to introduce new evidence in support of his initial motion. The new evidence includes U.S. State Department reports that have repeatedly "warranted either remand or relief for Chaldean Christians facing removal to Iraq." *Ishac v. Barr*, 775 F. App'x 782, 793 n.8 (6th Cir. 2019). The BIA nevertheless denied both of Yousif's requests and my colleagues affirm on both scores. I agree that under our standard of review, we must affirm the BIA's decision denying Yousif's motion for deferred removal and therefore concur in Parts I, II, III, and IV.A. I am equally convinced, however, that under our precedent we must return Yousif's remand motion to the Board for a more reasoned explanation. On that basis, I respectfully dissent from Part IV.B.

Denial of a motion to remand is reviewed under an abuse of discretion standard. *Marqus v. Barr*, 968 F.3d 583, 592 (6th Cir. 2020). The "test for deciding a motion to remand for consideration of new evidence is whether the evidence is material and was previously unavailable." *Id.* "The BIA abuses its discretion if its decision was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination." *Id.* (quotation marks omitted) (quoting *Ishac*, 775 F. App'x at 789). The "BIA has broad discretion to deny a motion to remand," but it must "analyze" the motion and "explain the basis" for its decision in an opinion that demonstrates it "actually consider[ed] the evidence and the arguments put forth by the applicant." *Id.* (quoting *Preçetaj v. Sessions*, 907 F.3d 453, 459 (6th Cir. 2018)). "The Board must," for example, explain "*why* it determined" the applicant's evidence was "not compelling." *Id.* (emphasis added) (quoting *Preçetaj*, 907 F.3d at 459). "Cursory, summary, or conclusory statements are inadequate." *Id.*

(quoting *Daneshvar v. Ashcroft*, 355 F.3d 615, 626 (6th Cir. 2004)). When the Board provides an inadequate explanation, we remand "to the BIA to articulate a basis for its denial." *Id.*

We have already applied this standard to remand motions filed by Christians seeking to introduce evidence on the evolving country conditions in Iraq, including to motions requesting to introduce updated U.S. State Department reports on conditions in the country—precisely the evidence Yousif seeks to introduce here. Our cases demand that the BIA undertake a "real analysis" of these country reports, "address the conclusions in" the reports, and explain "why" they are or are not material to a particular applicant's circumstances. *See Marqus*, 968 F.3d at 593.

We made that demand in the case of John Ishac, a Chaldean Christian who entered the United States as a refugee from Iraq when he was two months old and later became a lawful permanent resident. *Ishac*, 775 F. App'x at 784. After living in the United States for decades, Ishac was ordered removed for committing a firearm offense and a controlled substance offense. *Id.* He applied for withholding of removal under the CAT because Christians "were being tortured and killed" in Iraq. *Id.* His application contained "articles, affidavits, and country reports attesting to the dangerous conditions in Iraq." *Id.* The Government countered with evidence "highlighting the improved conditions in Iraq following the significant military successes against ISIS." *Id.* The IJ denied Ishac's application, observing that much of the evidence he provided described country conditions in Iraq prior to "the end of the war against" ISIS and thus did "not provide any context as to the current situation in Iraq." Admin. R. at 505-06, *Ishac*, 775 F. App'x 782. The IJ emphasized that the Iraqi government had since begun "investigating abuses by the PMF" and "increasing" the organization's "accountability." *Id.* at 506.

Ishac appealed and moved to remand to introduce new country conditions evidence. *See Ishac*, 775 F. App'x at 784-85. The new evidence included the U.S. Department of State's 2017 Country Report on Human Rights Practices in Iraq ("2017 Human Rights Report") and the U.S. Department of State's 2017 International Religious Freedom Report ("2017 Religious Freedom Report"). *Id.* at 785. As here, the BIA characterized the evidence in the Reports as "cumulative" and denied the motion. Admin. R. at 6, *Ishac*, 775 F. App'x 782.

The Board's analysis of Ishac's country conditions evidence is worth reproducing in full:

> The respondent has also submitted country condition evidence that post-dates his last hearing before the Immigration Judge (Respondent's Br., Tab B); however, the respondent has not demonstrated that this evidence is material as it is cumulative of evidence presented to the Immigration Judge and reflects the ongoing civil strife existing in Iraq, and that the Christian community that still lives in Iraq has lingering fears of persecution associated with the [ISIS] insurgency.

*Id.* at 6-7 (footnote omitted).

We deemed this analysis insufficient, explaining that the 2017 State Department Reports spoke "directly to the safety of Christians *following* military victories against ISIS in mid-2017," and that Ishac's motion to remand was based "largely on these materials." *Ishac*, 775 F. App'x at 793. The Reports post-dated, and contradicted, the evidence relied upon by the IJ, yet the BIA "summarily" dismissed the Reports as "cumulative" without acknowledging their tension with the IJ's opinion or explaining what made them duplicative of the existing record. *See id.* at 793 (quoting *Preçetaj*, 907 F.3d at 458). We found this treatment of the Reports particularly "concerning" because prior BIA decisions examining the Reports had considered them "evidence of torture that warranted either remand or relief for Chaldean Christians facing removal to Iraq." *Id.* at 793 n.8. We remanded, instructing the Board to "demonstrate" that it had "evaluated" and "analyzed" this aspect of Ishac's claim. *See id.* (quoting *Preçetaj*, 907 F.3d at 458).

We made the same demand in the case of Ammar Marqus, a Chaldean Christian who entered the United States in 2012 as a refugee from Iraq and later became a lawful permanent resident. Admin. R. at 3, *Marqus*, 968 F.3d 583. After years living in the United States, Marqus was ordered removed to Iraq for "attempted criminal sexual conduct." *Marqus*, 968 F.3d at 586-87. He sought deferral of removal under the CAT because he believed he would be tortured upon removal. *Id.* at 587. His fears were based on his Chaldean Christian faith, longstanding ties to the United States, criminal record, and prior instances of torture and abuse he had experienced in Iraq. *Id.* He supported his application with State Department reports, expert declarations, and other materials. *See id.* The Government repeated its claim that conditions in Iraq had improved following "the end of the war" with ISIS. Admin. R. at 242, *Marqus*, 968 F.3d 583. The IJ accepted the Government's testimony and denied relief, concluding that "increasing accountability for the PMF" reduced the likelihood that Marqus would be tortured upon returning to Iraq. *See id.* at 244.

Marqus appealed, requesting that the BIA remand for consideration of new evidence—the 2017 Human Rights Report and the 2017 Religious Freedom Report—the same Reports Ishac had offered. *Marqus*, 968 F.3d at 587. The BIA denied the motion, characterizing the new country conditions evidence as "insufficient" to justify remand. Admin. R. at 7, *Marqus*, 968 F.3d 583.

The Board's analysis of the country conditions evidence once again warrants repeating in full:

> The respondent requests a remand of the record to the Immigration Judge for consideration of previously unavailable evidence . . . . Even construing the additional evidence as a motion to remand, the respondent has not shown that the new evidence would likely change the outcome of his case. *See Matter of L-A-C-*, 26 I&N Dec. 516, 526 (BIA 2015) ("A motion to remand for the purpose of presenting additional evidence must conform to the same standards as a motion to reopen and will only be granted if the evidence was previously unavailable and would likely change the result in the case.") Although the new evidence he presents

on appeal might help with his argument that Iraqi Christians or deportees without identification documents are at risk of detention and torture, the new evidence is insufficient to meet his burden of proof to establish his claim for deferral of removal. . . . Therefore, the respondent has not demonstrated that a remand is warranted (Respondent's Br. at 34). *See* 8 C.F.R.§1003.2(c)(1); *see also Matter of L-A-C-*, 26 I&N Dec. at 526.

*Id.*

We held that this analysis was insufficient, explaining once more that the State Department Reports had undermined "some of the IJ's key findings as to country conditions." *Marqus*, 968 F.3d at 593. Marqus's IJ had found it "significant" that the Iraqi government was investigating human rights "abuses by the PMF." *Id.* The 2017 Human Rights Report, however, revealed the results of those investigations and concluded that "impunity effectively existed for government officials and security force personnel, including the PMF." *Id.* (alterations omitted). The Report also recounted "the many ways in which the PMF . . . continued to evade government oversight and accountability, including for unlawful detention and torture." *Id.* The 2017 Religious Freedom Report, meanwhile, documented that "Christians reported harassment and abuse at numerous checkpoints operated by" PMF "units, impeding their movement in and around several Christian towns on the Ninewa Plain." *Id.* (quoting Admin. R. at 107, *Marqus*, 968 F.3d 583). The 2016 Report did not include such accounts. *Id.*

We concluded in *Marqus* that the BIA's "bald statement" that the Reports were "insufficient" to warrant remand was too conclusory to satisfy its duty to "analyze and explain the basis" for its decision. *Id.* at 592-93 (first quoting *Hanna v. Mukasey*, 290 F. App'x 867, 873 (6th Cir. 2008); and then quoting *Preçetaj*, 907 F.3d at 459). We remanded to the Board to "address the conclusions" in the Reports and to explain why they were or were not material to Marqus's application—in other words, to provide "a real analysis." *Id.* at 593.

I would make the same demand in the case of Faris Yousif. Yousif is a Chaldean Christian who entered the United States as a refugee from Iraq when he was four years old and soon became a lawful permanent resident. After thirty years living in the United States, he was ordered removed for committing two controlled substance offenses. He sought deferral of removal under the CAT because he is a Chaldean Christian with strong ties to the United States, no familial or social connections to Iraq, no Iraqi identification documents, no Arabic fluency, and a criminal record. He substantiated his application with country conditions reports, expert declarations, and news reports. The Government reiterated its position that "the end of the war" with ISIS had improved conditions for Chaldean Christians in Iraq because the Iraqi government was now "investigating abuses by the PMF," which it concluded had led to "increasing accountability." Admin. R. at 459. The IJ accepted this testimony and denied Yousif's application for relief.

Yousif appealed, seeking reversal or, in the alternative, remand to introduce new evidence. His motion included the U.S. Department of State's 2018 Country Report on Human Rights Practices for Iraq (the 2018 version of the human rights Report Ishac and Marqus had relied upon) and the 2017 Religious Freedom Report (the same religious freedom Report Ishac and Marqus had relied upon). The BIA characterized the Reports as "cumulative" and denied the motion.

I again reprint the Board's analysis of the Reports, which the BIA assessed as follows:

> In support of his motion to remand, the respondent submitted the U.S. Department of State's 2018 Country Reports for Human Rights Practices for Iraq and 2017 International Religious Freedom Report . . . The new evidence is insufficient to meet the respondent's burden of showing that a remand is warranted. The State Department Reports and other documentary evidence regarding Iraq and its country conditions are largely cumulative of evidence previously submitted (Respondent's Br., Tab A) . . . . Inasmuch as [the] country conditions materials submitted address new information or events that occurred subsequent to the Immigration Judge's decision, the respondent has not sufficiently set forth evidence of a particularized risk of future torture in Iraq. *See Almuhtaseb v. Gonzales*, 453 F.3d at 751. The submitted evidence also does not reflect that an Iraqi official, or any alleged persecutor, would specifically intend to inflict severe pain or suffering onto the

> respondent. *See* 8 C.F.R. § 1208.18(a)(1); *Zaldana Menijar v. Lynch*, 812 F.3d at 501-02. Consequently, the respondent has not demonstrated that a remand is warranted in light of the submitted evidence. *See* 8 C.F.R. § 1003.2(c)(1).

Admin. R. at 6-7.

As in *Ishac* and *Marqus*, this analysis ignores that the Reports "undermine some of the IJ's key findings," *Marqus*, 968 F.3d at 593, because they "speak directly to the safety of Christians *following*" the military victories upon which the IJ relied in assessing Yousif's risk of torture, *Ishac*, 775 F. App'x at 793.

The IJ relied heavily on the existence of official investigations—"the Iraqi government is investigating abuses by the PMF"—to conclude that the government was "increasing" the PMF's "accountability." Admin. R. at 459. The 2018 Human Rights Report, however, addressed the results of those investigations, finding that the government "rarely made the results of the investigations public or punished those responsible for human rights abuses" and that the PMF continued to administer "forced disappearances; torture; arbitrary detention;" and "harsh and life-threatening prison and detention center conditions" with "[i]mpunity." Admin. R. at 87; *cf. Marqus*, 968 F.3d at 593.

The IJ also found that the PMF had "been working to secure the Christian population in the Ninewah province," and that the PMF was "not targeting religious minorities such as Christians and Yezidi despite opportunities to do so." Admin. R. at 459 (internal quotation marks omitted). Yet the 2018 Human Rights Report in fact reported that Christians faced "violence from government forces, particularly Iran-aligned PMF groups." Admin. R. at 117; *cf. Marqus*, 968 F.3d at 593. The 2017 Religious Freedom Report added to these findings, explaining that "Christians reported harassment and abuse at numerous checkpoints operated by [PMF] units,

impeding their movement in and around several Christian towns on the Ninewa Plain." Admin. R. at 132; *cf. Marqus*, 968 F.3d at 593.

The Board failed to "address the conclusions" of these Reports and failed to explain "why" they are cumulative. *See Marqus*, 968 F.3d at 593. It instead combined *Ishac*'s characterization of the Reports as "cumulative" (which we held was too "summary" to withstand review) with *Marqus*'s characterization of the Reports as "insufficient" (which we held was too "bald" to withstand review). The Board did not discuss the substance of Yousif's new evidence, did not identify the prior evidence with which it was cumulative, and did not acknowledge that the new evidence contradicted the IJ's findings—much less explain why it nevertheless failed to move the needle. It "is not our place" to conduct this inquiry ourselves in the Board's stead. *See id.* I would conclude that the BIA's opinion falls short of the "real analysis" our precedent demands and would remand to the Board to more fully explain the basis for its decision. *Id.*

The outcome here licenses the Government to remove Faris Yousif to Iraq under circumstances in which Immigration Judges have repeatedly concluded that the risk of torture is more likely than not. It does so on the authority of outdated evidence since undermined by U.S. State Department Reports on the basis that the BIA "mentioned" the Reports and promised that they are simply "cumulative." I would like more assurance before condemning Yousif to this fate, and I believe our precedent demands it. As to Part IV.B, I respectfully dissent.