NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0251n.06

No. 23-3560

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

EVELIO RUIZ LAFITA,

      Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

      Respondent.

)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jun 07, 2024
KELLY L. STEPHENS, Clerk

ON PETITION FOR REVIEW
FROM THE BOARD OF
IMMIGRATION APPEALS


OPINION

Before: COLE, CLAY, and THAPAR, Circuit Judges.

CLAY, J., delivered the opinion of the court in which COLE, J., concurred. THAPAR, J. (pp. 20–25), delivered a separate dissenting opinion.

**CLAY, Circuit Judge**. Petitioner Evelio Ruiz Lafita, a native and citizen of Cuba, petitions this Court to review a decision of the Board of Immigration Appeals ("BIA"). This BIA decision affirmed an order of the Immigration Judge ("IJ"), which denied Petitioner's motion to reopen proceedings related to his Convention Against Torture ("CAT") claim due to changed conditions in Cuba. In addition, the BIA denied Ruiz Lafita's motion to remand to present additional, new evidence to the IJ. On appeal, Ruiz Lafita argues that the BIA declined to consider key new evidence and did not meaningfully review his motion to remand. For the reasons set forth below, we **GRANT** Ruiz Lafita's petition for review in part and **REMAND** to the BIA for further explanation.

## I. BACKGROUND

### A. Factual Background

Ruiz Lafita was admitted to the United States in 2000 as a lawful permanent resident. At the time, Ruiz Lafita was approximately 10 years old. While in Cuba, Ruiz Lafita's parents served as founding members of the National Civil Union, which was a pro-democracy organization that "opposed the dictatorship of the Cuban Government through peaceful demonstrations." Lafita Fernandez Decl., A.R. 000110. According to the declarations of Ruiz Lafita and his mother, the family's political activities caused the Cuban police to harass them frequently. Eventually, the harassment and danger caused Ruiz Lafita's mother to apply for the visa lottery to the United States, and she received visa approval in the late 1990s. When the Cuban government discovered the family's immigration plans, "[t]he government sent a mover's truck to [Ruiz Lafita's] house," labeling the family as "traitor[s] to the nation." *Id.* at A.R. 000111. Ruiz Lafita then was forced to watch "fanatical supporters of the Cuban government" brutally beat his mother in the streets. *Id.* Ruiz Lafita and his mother fled Cuba shortly after, settling in Michigan in 2000.

Based on the events recounted in her declaration, Ruiz Lafita's mother believes that "[i]f either Evelio or [her] were to land at the airport in Cuba, [they] would be detained immediately." *Id.* at A.R. 000112. Ruiz Lafita also provided a declaration recalling these same events, explaining that "[he is] proud to call [himself] anti-Castro and a supporter of democracy and freedom." *Id.* at A.R. 000107. Based on his political beliefs, Ruiz Lafita stated that his deportation to Cuba would result in his torture and detainment by the Cuban government.

Ruiz Lafita lived in Michigan throughout his teenage and young adult years. Eventually, he dropped out of school and began to hang out with the wrong crowd. His subsequent choices ultimately led to a felony conviction; on December 20, 2012, Ruiz Lafita was convicted of armed

robbery, in violation of Mich. Comp. Laws § 750.529, as well as possessing a firearm while committing a felony, in violation of Mich. Comp. Laws § 750.227b. These convictions resulted in the initiation of Ruiz Lafita's removal proceedings, and he subsequently served nearly nine years in prison. During his incarceration, Ruiz Lafita completed a variety of lifestyle and education courses, as well as finished his GED.

## B. Procedural History

While Ruiz Lafita was serving his sentence, in 2014, the Department of Homeland Security ("DHS") initiated removal proceedings against Ruiz Lafita by serving him with a notice to appear ("NTA") and charging him with removability under § 237 of the Immigration and Nationality Act, 8 U.S.C. § 1227. Section 237(a)(2)(A)(iii) provides for removal at any point after admission to the United States if the immigrant has been convicted of an aggravated felony or a crime of violence. On January 27, 2015, Ruiz Lafita appeared pro se and conceded all factual allegations in the NTA. Accordingly, the IJ sustained all charges of removability and designated Cuba as Ruiz Lafita's country of removal. At this initial hearing, Ruiz Lafita represented that he intended to seek relief under the CAT.

However, at his subsequent hearing on March 24, 2015, Ruiz Lafita appeared again pro se, and explained that he could not gather the relevant materials and would no longer be seeking relief. Ruiz Lafita further declined the IJ's offer of additional time to file, and his CAT application was thus deemed abandoned. Based on the conceded charges in the NTA, Ruiz Lafita was ordered removed to Cuba. After being released from prison on parole in November 2020, Ruiz Lafita was transferred to ICE detention while awaiting his removal.

Days prior to Ruiz Lafita's impending removal to Cuba, he finally secured an attorney. Represented by counsel this time, on February 22, 2021, Ruiz Lafita filed a motion for an

emergency stay and moved to reopen proceedings to apply for protection under CAT.[1]  Because this motion to reopen was filed more than 90 days after Ruiz Lafita was ordered removed in 2015, Ruiz Lafita was required to show that the country conditions in Cuba had changed in a manner that increased the likelihood that he would face torture once removed.  *See* 8 U.S.C. § 1229a(c)(7)(C)(ii).  In this initial motion, Ruiz Lafita did not append any declarations or other evidence supporting his individualized fear of torture.  He alleged that the motion's shortcomings were attributable to the COVID-19 pandemic, as he could not have a face-to-face meeting with his attorney and "did not feel able to write a declaration to support his [application]."  Pet'r's BIA Br., A.R. 000228–29.  DHS opposed reopening.

The IJ denied Ruiz Lafita's motion to reopen on April 13, 2021, noting that the motion "focuse[d] almost exclusively on the alleged experiences of his parents as political dissidents in Cuba before coming to the United States—information that was available when [Ruiz Lafita] had the opportunity to file for relief in 2015."  Order of IJ, A.R. 000253–54.  In addition, the IJ determined that there was not a material change in Cuba's country conditions that would increase any threat of torture to Ruiz Lafita.  The IJ concluded by noting that Ruiz Lafita failed to address any factors that mitigated his serious criminal history.

In May 2021, Ruiz Lafita timely appealed the IJ's holding to the BIA.  He filed his BIA brief on July 6, 2021.  The BIA affirmed the IJ's denial of Ruiz Lafita's motion to reopen, holding that Ruiz Lafita only pointed to a "mere continuation or incremental worsening of conditions that already existed in 2015."  BIA Order, A.R. 000004.  The BIA further held that Ruiz Lafita failed to show how these purported changes in the United States' relationship with Cuba tied to the

---

[1] The motion for an emergency stay was granted in March 2021, pending the resolution of Ruiz Lafita's motion to reopen.  After this motion for an emergency stay was granted, Ruiz Lafita was released from ICE detention and placed on DHS supervision.

likelihood that he would be singled out for torture. In his appeal to the BIA, Ruiz Lafita also submitted unreviewed, new evidence of updated country conditions in Cuba, which the BIA construed as a motion to remand for the purpose of submitting additional evidence. The BIA similarly denied this motion to remand, holding that the additional evidence was merely cumulative of the evidence presented to the IJ and likewise did not show that the conditions in Cuba had materially changed since 2015.

This timely petition for review followed.

## II.     DISCUSSION

### A. Standard of Review

Ruiz Lafita first appeals the IJ's denial of his motion to reopen proceedings to seek CAT relief and the BIA's subsequent affirmance. To protect the finality of immigration decisions, motions to reopen immigration proceedings are generally disfavored, and granting a motion to reopen is largely discretionary. *See INS v. Doherty*, 502 U.S. 314, 323 (1988). This Court reviews the BIA's denial of a motion to reopen proceedings for abuse of discretion. *Alizoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir. 2007). Although generally motions to reopen must be filed within 90 days after a final order of removal is entered, Ruiz Lafita brought his motion to reopen pursuant to an exception for motions "based on changed country conditions arising in the country of nationality or the country to which removal has been ordered." *Preçetaj v. Sessions*, 907 F.3d 453, 457 (6th Cir. 2018) (citing 8 U.S.C. § 1229a(c)(7)(A), (C)(ii)). The evidence of changed country conditions must be material, previously unavailable, and not discovered or presented at the previous proceeding. *Id.*

In addition, Ruiz Lafita appeals the BIA's denial of his motion to remand for the consideration of new evidence. "A motion to remand for the purpose of presenting additional

evidence must conform to the same standards as a motion to reopen and will only be granted if the evidence was previously unavailable and would likely change the result in the case." *Yousif v. Garland*, No. 19-4084, 2024 WL 641044, at *6 (6th Cir. Feb. 15, 2024) (quoting *Matter of L-A-C-*, 26 I & N Dec. 516, 526 (BIA 2015)). Accordingly, this Court similarly reviews the BIA's denial of a motion to remand to consider new evidence for an abuse of discretion. *Marqus v. Barr*, 968 F.3d 583, 592 (6th Cir. 2020). "The BIA abuses its discretion if its decision was made 'without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination.'" *Id.* (quoting *Ishac v. Barr*, 775 F. App'x 782, 789 (6th Cir. 2019)). The BIA also abuses its discretion when it does not consider the petitioner's newly proffered evidence or neglects to "'articulate' the basis for its decision," thus preventing "meaningful review by an appellate court." *Akrawi v. Garland*, No. 19-3896, 2022 WL 3681260, at *7 (6th Cir. Aug. 25, 2022) (quoting *Marqus*, 968 F.3d at 592).

## B. Analysis

### 1. February 2021 Motion to Reopen Proceedings

To succeed on a time-barred motion to reopen, Ruiz Lafita must make out a prima facie case entitling him to relief under the CAT and show changed conditions within the designated removal country. Ruiz Lafita's prima facie case under the CAT must illustrate a reasonable likelihood that he would face a particularized threat of torture from the Cuban government, or a threat of torture to which the Cuban government would acquiesce. *See* 8 C.F.R. § 1208.16(c)(2); *Marqus*, 968 F.3d at 587. As for showing changed conditions within Cuba, Ruiz Lafita's first opportunity to pursue CAT protection was in 2015 when he waived his opportunity to do so. To meet the exception to the 90-day time limit, Ruiz Lafita must therefore show that conditions in Cuba materially changed from 2015 to the 2021 filing of his time-barred motion to reopen.

6

The BIA may deny a motion to reopen based on the following grounds: (1) "failure to establish a prima facie case for the relief sought"; (2) failure to introduce material evidence that was previously unavailable; or (3) "a determination that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief which he sought." *Ilic-Lee v. Mukasey*, 507 F.3d 1044, 1049 (6th Cir. 2007). Importantly, in the BIA's review of the IJ's determination that Ruiz Lafita failed to make out a prima facie case for relief under the CAT, the BIA is limited to the arguments and evidence that Ruiz Lafita originally submitted to the IJ with his February 2021 motion. *See Kaddoura v. Holder*, 472 F. App'x 367, 373 (6th Cir. 2012) (noting that the BIA "is an appellate body whose function is to review, not to create, a record," and it therefore does not consider new evidence on appeal (citing *In re A-P-*, 22 I & N Dec. 468, 476 (BIA 1999))). This February 2021 evidence list was significantly limited compared to the new July 2021 evidence that Ruiz Lafita attempted to submit at the appeal phase. In fact, the sparse evidence submitted in February 2021 solely included a 2019 Cuba Human Rights Report, various secondary sources regarding former-President Trump's policies on the United States' relations with Cuba, an article about a United States spy in Havana, general policy directives regarding Cuba, and Ruiz Lafita's criminal and correctional records.

With its review cabined to the limited evidence that accompanied Ruiz Lafita's February 2021 motion to reopen, the BIA did not abuse its discretion in determining that Ruiz Lafita failed to show "how changes in United States-Cuba intergovernmental relations are material to his claim that he would be singled out for torture by the Cuban government." BIA Opinion, A.R. 000004. Indeed, Ruiz Lafita did not submit a shred of evidence to support his claim that he was likely to face a *particularized* risk of torture. *Cf. Jado v. Wilkinson*, 847 F. App'x 278, 288 (6th Cir. 2021) (holding that, even assuming that the proffered evidence demonstrates the escalation of human

rights violations in a country, the petitioner had "not identified particular facts in the record evidence showing that it is more likely he will be tortured than in 2017"). Even assuming Ruiz Lafita successfully submitted evidence of changed country conditions in Cuba, there is no real dispute that his February 2021 motion lacked evidence specific to Ruiz Lafita's fear of torture—which is fatal to his motion to reopen. *See, e.g.*, *Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1156 (6th Cir. 2010) (holding that, although petitioners submitted evidence of country conditions, the petitioners' assertions related to their particularized threat of torture were "too generalized and too speculative to form the basis of relief").

Regardless of Ruiz Lafita's alleged struggles with timing in securing an attorney and the COVID-19 pandemic, his initial February 2021 filing was deficient. When solely faced with a Human Rights Report and various general articles about Trump's stance on Cuba, the IJ did not err in finding that Ruiz Lafita did not show that Cuba's changed country conditions would increase the likelihood that he would individually be targeted for torture. *Cf. Trujillo Diaz v. Sessions*, 880 F.3d 244, 250 (6th Cir. 2018) (explaining that an applicant seeking to establish a likelihood of being individually targeted for torture "cannot rely on speculative conclusions or mere assertions of fear of possible persecution, but instead must offer reasonably specific information [and evidence] showing a real threat of individual [torture]" (citation omitted)); *see also Jado*, 847 F. App'x at 287 ("[Petitioner] offers no specific evidence demonstrating that the PMF would seek to single him out individually for torture."). For these reasons, the BIA did not abuse its discretion in affirming the IJ's holding regarding Ruiz Lafita's motion to reopen.[2]

---

[2] The dissent mistakenly views this holding as inconsistent with our subsequent holding regarding Ruiz Lafita's motion to remand. Dissenting Op., at 24. However, where the record from February 2021 is completely devoid of any evidence establishing a particularized threat of torture, one sentence is sufficient to highlight this deficiency. Indeed, Ruiz Lafita himself admits that his original motion to reopen was deficient in this regard. The obvious lack of evidence, confirmed

### 2. July 2021 Motion to Remand

Perhaps noting the shortcomings in his initial February 2021 motion to reopen, Ruiz Lafita primarily challenges the BIA's denial of his motion to remand for the IJ to consider the new evidence submitted with his July 2021 BIA appeal. "The relevant test for deciding a motion to remand for consideration of new evidence is whether the evidence is material and was previously unavailable." *Marqus*, 968 F.3d at 592 (applying 8 C.F.R. § 1003.2(c)(1), the motion-to-reopen provision, to a motion to remand). In his July 6, 2021 appeal to the BIA, Ruiz Lafita claimed that he was submitting new, material evidence that was unavailable in 2015 to support his motion to reopen, as well as new, material evidence that was unavailable to support his February 2021 motion to reopen.

The dissent erroneously contends that the BIA's discussion of Ruiz Lafita's motion to remand is "entirely applicable" to his motion to reopen. Dissenting Op., at 23. Although the applicable standards for a motion to reopen and a motion to remand have significant overlap, the analyses are nonetheless separate. The BIA could not consider *any* of Ruiz Lafita's newly submitted evidence in its review of the February 2021 motion to reopen. *See Kaddoura*, 472 F. App'x at 373 (noting that the BIA does not consider new evidence on appeal); *Abdulahad v. Garland*, 99 F.4th 275, 285 (2024) (same). Accordingly, the BIA had to meaningfully analyze both the IJ's February 2021 motion to reopen determination and, separately, Ruiz Lafita's newly submitted July 2021 evidence in support of his motion to remand. While the dissent poses the question, "why require two separate, presumably identical explanations for the same issue?", the answer is simple: these explanations should not be identical, as each explanation relies on a

---

by Ruiz Lafita's own admissions on appeal, easily distinguishes our analysis from that of the next section regarding Ruiz Lafita's motion to remand, where Ruiz Lafita submitted hundreds of pages of new evidence that the BIA failed to meaningfully analyze.

completely different set of evidence.  *Cf. Ishac*, 775 F. App'x at 789 (affirming BIA's CAT protection decision because petitioner's 2017 State Department Reports were "never presented to the IJ and [could not] constitute a basis for reversing the IJ's decision," while reversing BIA's motion to remand decision for its cursory analysis of the newly presented evidence); *Welson v. Sessions*, 744 F. App'x 249, 258–59 (6th Cir. 2018) (affirming BIA's denials of petitioner's numerous motions to reopen or remand where the BIA provided thorough analysis for each new set of evidence).

Listing this new evidence in his BIA appeal, Ruiz Lafita pointed to:  (1) the declarations of Ruiz Lafita and his mother, detailing the past torture they were forced to endure in Cuba and Ruiz Lafita's current particularized fears of torture; (2) various "new reports showing changes in the country conditions in Cuba"; and (3) "evidence of how the Cuban Government has used the COVID-19 crisis to institute increasingly violent and repressive measures to shutdown free speech and to step up arrests, imprisonment[,] and torture of political dissidents."  Pet'r's BIA Br., A.R. 000234–35.  Related to the newly proffered declarations, Ruiz Lafita argued that these "detailed descriptions of the brutality [that he and his mother] received in Cuba, coupled with [Ruiz Lafita's] evidence that he will enter Cuba as a marked man by the state, establishes that he is entitled to CAT protection."  *Id.* at A.R. 000238.  Ruiz Lafita contended that these declarations were unavailable to support his initial motion to reopen before the IJ due to the unique circumstances of being incarcerated during COVID-19, which prevented him from being able to effectively communicate with his lawyer.

In addition to highlighting his new and previously unavailable evidence, Ruiz Lafita also argued that the IJ erred by ruling that Ruiz Lafita did not address "why he is deserving of a discretionary grant given his serious criminal history."  *Id.* at A.R. 000243.  Contrary to the IJ's

representations, Ruiz Lafita submitted proof that he demonstrated positive character development while serving his sentence by completing multiple rehabilitation and educational programs. Ruiz Lafita represented to the BIA that this documentation was, through no fault of his own, "separated from his I-589 application and motion to Reopen[,] which [was] not surprising given the minimal staffing at the Detroit Immigration Court." *Id.* at A.R. 000229. Because Respondent does not dispute that this evidence was not considered by or available to the IJ, this Court can also consider Ruiz Lafita's achievement certificates as "new" evidence that was previously unavailable through no fault of Ruiz Lafita's.

Ruiz Lafita's motion to remand argued that the unconsidered mitigation evidence, coupled with the new declarations and new evidence of changed country conditions, would result in the IJ reaching a different result and granting his motion to reopen. The BIA disposed of Ruiz Lafita's new evidence in four sentences:

> [Ruiz Lafita] has submitted updated country conditions on appeal, which we construe as a motion to remand. "A motion to remand for the purpose of presenting additional evidence must conform to the same standards as a motion to reopen and will only be granted if the evidence was previously unavailable and would likely change the result in the case." The evidence submitted by [Ruiz Lafita] shows that the Cuban government has continued its widespread human rights violations, committed similar human rights abuses in 2015, and is cumulative of evidence presented before the Immigration Judge. (Motion to Accept Attachments at 1-87) . . . We will, therefore, deny the motion to remand because [Ruiz Lafita] has not met his burden to show that the newly submitted evidence is likely to change the result reached below.

BIA Order, A.R. 000004 (internal citations omitted). The first two sentences merely explain the legal standard applicable to a motion to remand; the final sentence is a legal conclusion. This Court is therefore left to review and evaluate a single sentence: "The evidence submitted by [Ruiz Lafita] shows that the Cuban government has continued its widespread human rights violations, committed similar human rights abuses in 2015, and is cumulative of evidence presented before the Immigration Judge." *Id.* Notably absent from this short analysis is any mention of Ruiz

Lafita's newly submitted declarations, any acknowledgment of the evidence that the IJ did not consider related to Ruiz Lafita's character, or any specific evaluation of the newly submitted reports and articles.[3]

Although we acknowledge that the BIA has broad discretion to deny Ruiz Lafita's motion to remand, it must articulate, at a minimum, "why it determined that [Ruiz Lafita's] evidence is not compelling" to allow for meaningful review by an appellate court. *Marqus*, 968 F.3d at 592 (quoting *Preçetaj*, 907 F.3d at 459). "Cursory, summary, or conclusory statements are inadequate." *Id.* (quoting *Daneshvar v. Ashcroft*, 355 F.3d 615, 626 (6th Cir. 2004)). Under these standards, where the BIA has cursorily denied a motion to reopen or a motion to remand, we have "remanded the case to the BIA to articulate a basis for its denial that would enable meaningful review by this [C]ourt." *Id.* at 593.

For example, in *Marqus v. Barr*, this Court remanded the following BIA analysis and holding—that closely parallels the superficial depth of reasoning in the instant case—for additional explanation:

> The respondent requests a remand of the record to the Immigration Judge for consideration of previously unavailable evidence. . . . We generally do not consider new evidence submitted for the first time on appeal; rather, we review the record before the Immigration Judge. Even construing the additional evidence as a motion to remand, the respondent has not shown that the new evidence would likely change the outcome of his case. Although the new evidence he presents on appeal might help with his argument that Iraqi Christians or deportees without identification documents are at risk of detention and torture, the new evidence is insufficient to meet his burden of proof to establish his claim for deferral of removal. The respondent has also not presented evidence that addresses the adverse credibility

---

[3] In addition, rather than cite generally to Ruiz Lafita's motion to accept attachments, the BIA should have cited to the newly submitted exhibits themselves. The referenced motion attaches only certain inadvertently omitted exhibits—a limited portion of Ruiz Lafita's newly submitted evidence. The BIA's vague citation therefore indicates that the BIA did not at all consider the latter 100 pages of Ruiz Lafita's purported evidence for purposes of his motion to remand, which does contain previously unavailable evidence that differs from his original filing with the IJ.

finding.  Therefore, the respondent has not demonstrated that a remand is warranted.

*Marqus v. Barr* Admin. Record, Case No. 18-1452, A.R. 000007 (internal citations omitted).  After underscoring that "the BIA did not even name the new evidence—let alone analyze why each piece of new evidence was either immaterial or previously unavailable," the Court in *Marqus* "remand[ed] to the BIA either to explain or to change its position on the new evidence." *Marqus*, 968 F.3d at 592, 93.

The *Marqus* Court also cataloged similar cases in which the Sixth Circuit reversed for additional explanation where the BIA merely devoted a couple of sentences or a lone paragraph to the petitioner's motion to remand.  *See, e.g.*, *Ishac*, 775 F. App'x at 793 (remanding for additional explanation where the BIA "fail[ed] to address the 2017 State Department Reports submitted, for the first time, in support of Ishac's motion to remand"); *Preçetaj*, 907 F.3d at 458–60 (remanding for additional explanation where the BIA's analysis could be "constrained to two sentences," and where the BIA "cursorily stated that the evidence did not reflect a material change in country conditions"); *Hanna v. Mukasey*, 290 F. App'x 867, 872–73 (6th Cir. 2008) (remanding for additional explanation where the BIA's decision was conclusory and contained within one paragraph).  Using these prior cases as a guide, the BIA in Ruiz Lafita's appeal has provided even less of an explanation, warranting remand.  Not only could its reasoning be constrained to one sentence with generally applicable conclusions that could apply to *any* motion to remand, but the BIA did not mention a *single* piece of Ruiz Lafita's newly submitted evidence.

To provide a contrasting example of what this Court has found constituted adequate review of a motion to remand, in *Jado v. Wilkinson*, the Court noted that the BIA "identified and addressed the key exhibits supporting the motion, describing why it did not find the submitted evidence persuasive."  847 F. App'x at 284.  Indeed, the *Jado* Court carefully distinguished *Marqus* and

similar cases, explaining that the BIA, "[a]cross multiple paragraphs," identified "various items of record evidence but explained why their contentions were not persuasive." *Id.* at 288. Specifically, the BIA "address[ed] the conclusions in the State Department's Human Rights and Religious Freedom Reports," "analyzed all six of Jado's expert declarations," and "addressed why the 2019 U.S. Commission on International Religious Freedom Report and 2019 State Department Travel Advisory for Iraq did not save Jado's motion." *Id.* Overall, the "discussion of the evidence, and any new facts raised, was much more detailed than what is described in *Marqus*." *Id.*

In stark contrast, the BIA's one-sentence disposal of Ruiz Lafita's motion to remand is a far cry from the level of detail that has previously satisfied this Court. *Cf. Akrawi*, 2022 WL 3681260, at *8 (distinguishing *Marqus v. Barr* by explaining that "the BIA named the 2017 reports and explained that the reports did not show a 'remarkable shift' in the threat of harm that Christians face in Iraq as compared to previous reports"); *Abdulahad v. Barr*, 838 F. App'x 126, 135, n.2 (6th Cir. 2020) (holding the BIA did not abuse its discretion in denying motion to remand where it explained that the newly submitted country conditions reports were cumulative and detailed exactly why and how the specific reports were cumulative); *Petros v. Garland*, No. 21-3826, 2023 WL 3035217, at *7 (6th Cir. Apr. 21, 2023) (holding the BIA did not abuse its discretion in denying motion to remand where it specifically cited to each piece of new evidence and explained why the evidence was cumulative over multiple paragraphs). In this case, the BIA failed to address the new evidence or state why the evidence is or is not material to Ruiz Lafita's circumstances. Accordingly, the BIA "has not articulated a basis to allow for meaningful review by this Court." *Preçetaj*, 907 F.3d at 459. The BIA merely stated that the evidence was cumulative of evidence presented before the IJ, that the evidence simply showed Cuba engaging in continued human rights violations, and, in a conclusory fashion, that Ruiz Lafita did not meet his burden to show that the

new evidence is likely to change the result below. In doing so, the BIA does not explain what makes the new evidence duplicative of the original record, nor does it provide any real explanation for disposing of Ruiz Lafita's newly submitted evidence.

Taking each piece of new evidence in turn, the newly presented declarations are clearly not "cumulative," and the IJ specifically noted that Ruiz Lafita had not submitted affidavits or evidence to support his alleged facts related to a particularized threat of torture.[4] But the BIA nonetheless omits any mention of this additional evidence that the IJ signposted was clearly material to Ruiz Lafita's sought-after relief. Contrary to the Respondent's arguments that these two affidavits do not show a material worsening in Cuba's conditions since 2015 (which is reasoning that the BIA did not articulate), the evidence certainly bears upon a separate, imperative portion of Ruiz Lafita's argument—that he will face torture for his political opinions upon his removal to Cuba. Not only was the BIA wrong to say that the affidavits were merely cumulative of that which had been previously submitted, but the non-duplicative affidavits squarely addressed one of the IJ's primary reasons for denying Ruiz Lafita's claims for relief—namely, that Ruiz Lafita "provided no affidavits or other evidence to support the specific facts alleged in his I-589." IJ Order, A.R. 000254. The BIA does not explain why this evidence is immaterial.

Further, the BIA also omits any mention of the submitted evidence of the "positive equities" in the case. Once again, this evidence is not "cumulative," and it addresses a specific aspect of Ruiz Lafita's motion to remand that the IJ found lacking. Respondent argues that this assertion of error is "not before the Court for review," because the BIA "did not affirm the decision

---

[4] To the dissent's point, the BIA need not rely upon or mention "every single exhibit in its analysis" upon remand. *Jado*, 847 F. App'x at 289. But where the BIA's reasoning and analysis is so sparse that we cannot determine whether the BIA abused its discretion in denying Ruiz Lafita's motion, it is within our authority to reference the specific evidence that the BIA failed to examine.

on this basis." Resp. Br., ECF No. 16, 29. However, even though this Court may not *affirm* the BIA's holding on a basis that was not articulated by the agency, this Court can undisputedly determine that the BIA's analysis was inadequate by highlighting what the BIA's analysis lacks. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (noting that appellate courts may not substitute a more proper or adequate basis to uphold administrative action); *Makdesion v. Garland*, No. 22-3436, 2023 WL 2972548, at *2 (6th Cir. Apr. 17, 2023) (reversing BIA discretionary decision and noting "we may not assume that the Boad considered factors that it failed to mention in its opinion" (citation omitted)). The BIA does not explain why remedying one of the deficiencies below—that the IJ spent an entire paragraph emphasizing—would not change the outcome of the motion to reopen, particularly where granting a motion to reopen is a largely discretionary matter.

Finally and importantly, the BIA did not engage with the new articles and reports that Ruiz Lafita submitted on appeal to show changed country conditions. "Though it need not 'write an exegesis on every contention,' the BIA must 'consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted.'" *Trujillo Diaz*, 880 F.3d at 255 (quoting *Scorteanu v. INS*, 339 F.3d 407, 412 (6th Cir. 2003)); *see also Preçetaj*, 907 F.3d at 458 ("Although we do not require the Board's opinion to mention every piece of evidence . . . it is nevertheless compelled to analyze and explain the basis on which it decides against a petitioner." (citation omitted)). Indeed, "[o]ur cases demand that the BIA undertake a 'real analysis' of [the petitioner's new evidence], 'address the conclusions in' these documents, and explain 'why' they are or are not material to a particular applicant's circumstances." *Yousif*, 2024 WL 641044, at *8 (Stranch, J., concurring in part and dissenting in part) (citing *Marqus*, 968 F.3d at 593).

16

In its brief paragraph related to Ruiz Lafita's motion to remand, the BIA fails to discuss any report, article, or resource, summarily designating the 200+ pages of exhibits as "cumulative" or as a mere continuation of poor conditions in Cuba. This generally applicable explanation is insufficient, as any of the top countries from which refugees are fleeing have engaged in "continued civil rights violations" for many years, and such a finding does not necessarily preclude a finding of changed country conditions. *Cf. Ishac*, 775 F. App'x at 788 (remanding to BIA where, although Iraq has consistently engaged in continued civil rights violations, petitioner submitted new evidence that there existed a heightened persecution of Chaldean Christians); *Mandebvu v. Holder*, 755 F.3d 417, 428 (6th Cir. 2014) (noting that even incremental change is sufficient for the changed country conditions exception). Our precedent accordingly demands more from the BIA. The BIA's broad stroke conclusions do not indicate that it has carefully considered—or even read—the evidence. To provide one example of many, Ruiz Lafita provided a Freedom House Report on Cuba that was previously unavailable for inclusion in his February 2021 motion.[5] This report scores Cuba a 0/4 in every category related to political pluralism and participation, and states that "[p]olitical dissent is a punishable offense, and dissidents are systematically harassed, detained, physically assaulted and imprisoned for minor infractions." Freedom in the World Report, A.R. 000130. Another example of relevant evidence is contained within the previously unavailable Cuba 2020 Human Rights Report.[6] This newly submitted report promulgated by the State Department describes the Cuban government's unprecedented use of the COVID-19

---

[5] This Report was published on March 3, 2021, approximately 10 days after Ruiz Lafita filed his initial motion to reopen.

[6] This Report was published on March 30, 2021, over a month after Ruiz Lafita filed his initial motion to reopen.

pandemic "to target government critics." [7] Cuba 2020 Human Rights Report, A.R. 000026; *cf. Dieng v. Holder*, 698 F.3d 866, 872 (6th Cir. 2012) ("State Department reports are generally the best gauge of conditions on foreign countries."). For example, one member of the Patriotic Union of Cuba was arrested for lowering her mask to smoke a cigarette on the street and was pretextually sentenced to 18 months in prison. Of course, this information was previously unavailable in both the 2015 and the 2019 Human Rights Reports that contained no mention of COVID-19, as the pandemic had yet to occur.

We do not underscore this evidence to opine on the merits of Ruiz Lafita's motion remand or indicate whether the motion should be granted—instead, it is important to illustrate that the BIA did not meaningfully consider Ruiz Lafita's new evidence for purposes of his motion to remand. Indeed, in providing the required additional analysis and reasoning, the BIA may or may not reach the same conclusion. But the BIA's inadequate explanation here is nonetheless imperative to correct, as its reasoning is so sparse that this Court cannot provide the meaningful review that Ruiz Lafita deserves. *Cf. Preçetaj*, 907 F.3d at 459 ("[S]imply because the Board *may* reach the same result upon remand (and of course, it may not) does not render the Board's action 'harmless.'").[8] Regardless of what result the BIA ultimately reaches, it is imperative that the BIA—at the very least—articulate the rationale for its decision and specifically evaluate Ruiz Lafita's newly submitted evidence, allowing for meaningful review by this Court. *Id.*

"Without a real analysis by the BIA of why [Ruiz Lafita's] evidence is immaterial, we cannot at this stage determine whether the BIA abused its discretion in denying remand." *Marqus*,

---

[7] Similarly, the Human Rights Watch Organization also reported that "the [Cuban] government has used COVID-19 related movement restrictions as an excuse to suppress protests." World Report 2021, A.R. 000124. This report is also newly attached to Ruiz Lafita's appeal.

[8] Further, during oral argument, the government conceded that it forfeited any arguments regarding harmless error.

968 F.3d at 593. In the BIA's meager paragraph devoted to Petitioner's motion to remand, the BIA did not "[hear] and [think through]" Ruiz Lafita's newly submitted evidence, but rather "merely reacted" and failed to provide this Court with a meaningful analysis to review. *Trujillo Diaz*, 880 F.3d at 255. And where the BIA fails to specifically address Ruiz Lafita's new evidence, this Court should "remand to the BIA either to explain or to change its position on the new evidence." *Marqus*, 968 F.3d at 593; *see also Ishac*, 775 F. App'x at 793 (deeming the BIA's analysis as insufficient and remanding where petitioner's newly submitted evidence was merely regarded as "cumulative").

### III.    CONCLUSION

For the reasons set forth above, we **DENY** in part and **GRANT** in part the petition for review and **REMAND** to the BIA for reconsideration and further explanation consistent with this opinion.

**THAPAR, Circuit Judge, dissenting**. Every year, the BIA reviews tens of thousands of immigration appeals. Its expertise enables it to navigate the challenge of working through a heavy caseload while giving each petitioner the attention his case merits. In turn, we review its decisions deferentially. Because the BIA didn't abuse its discretion here, I respectfully dissent.

I.

Evelio Ruiz Lafita and his mother became lawful permanent residents of the United States in 2000. Unfortunately, Ruiz Lafita squandered an opportunity to benefit himself or his new country. Instead, he dropped out of school and turned to crime. In 2012, he used a sawed-off shotgun to commit an armed robbery. After he was convicted, the United States initiated removal proceedings. Ruiz Lafita conceded his removability but sought relief under the Convention Against Torture. He ultimately decided to abandon his application, admitting he lacked the necessary evidence. When the IJ offered additional time to gather evidence, Ruiz Lafita declined. Nine years and one prison sentence later, Ruiz Lafita moved to reopen proceedings and reapply for CAT relief. IJ denied the motion, and Ruiz Lafita appealed. Before the BIA, Ruiz Lafita presented new evidence, which the BIA construed as a separate motion to remand. The BIA denied both motions.

II.

To warrant remand, Ruiz Lafita needed to (1) present new evidence of a material change in country conditions, (2) show that the evidence establishes a prima facie case for relief, and (3) demonstrate entitlement to the discretionary relief. *INS v. Doherty*, 502 U.S. 314, 323 (1992). The BIA concluded that Ruiz Lafita failed to clear the first hurdle, since his evidence revealed only that Cuba's human rights abuses have occurred since 2015. Because Ruiz Lafita failed the first criterion for relief, the BIA didn't need to address the latter two. We must affirm if we can

"perceive" that the BIA considered Ruiz Lafita's evidence and had a rational basis for denying the motion. *Scorteanu v. INS*, 339 F.3d 407, 412 (6th Cir. 2003) (citation omitted). We don't require an "exegesis" on the issues. *Id.* The BIA exceeded that low bar.

To see why, consider the new evidence Ruiz Lafita presented in his motion. Ruiz Lafita offered the 2015 Human Rights Report, 2020 Human Rights Report, a 2020 report on religious freedom, a 2021 human trafficking report, and a 2021 travel Cuba advisory. As the BIA correctly noted, those reports confirm that conditions in Cuba were poor when Ruiz Lafita's initial petition was denied in 2015 and that they merely continue to be poor. For instance, the 2020 Human Rights Report says that police "continued" to use detentions to prevent political activity. CAR 28. There were also "recurring reports" that Cuban security forces committed violence against political dissidents, paralleling the 2015 report that government forces "physically assaulted human rights . . . advocates . . . both during detention and imprisonment." CAR 22; CAR 61. True, the 2020 report contains one confirmed instance of the Cuban government killing an unarmed dissident, whereas the 2015 report contained no confirmed killings. Pet'r Br. 22. But even if one reported governmental killing qualified as materially worsened conditions (it doesn't), Ruiz Lafita misreads the evidence. Although the 2015 Report didn't identify any confirmed killings, it concluded that government agents likely caused the deaths of two political opponents. CAR 61 ("[T]he evidence strongly suggested that agents of the state caused the car crash."). So the report shows only that Cuba has a long history of targeting political opponents and continues to do so today. Indeed, as the BIA recognized, the Cuban government "committed similar rights abuses in 2015" and "has continued its widespread human rights violations" today. CAR 4. Cuba's abuses are nothing new. That dooms Ruiz Lafita's claim.

21

Ruiz Lafita also offers evidence that U.S.-Cuba relations improved in 2015 but since worsened. He points out that President Obama "thawed" the formerly frigid relationship with Cuba: the United States reopened embassies, removed Cuba from the list of State Sponsors of Terrorism, lifted trade and travel restrictions, and attempted to normalize relations. Pet'r Br. 26; CAR 460–63, 472–84. But this evidence merely reflects different administrations' diplomatic approaches to Cuba—not a change in Cuba itself. And even if it did demonstrate the Cuban government's improvement, the evidence still wouldn't help Ruiz Lafita. The relevant reference point for identifying a *change* in country conditions is the date of the hearing on Ruiz Lafita's initial motion: March 24, 2015. 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii). So Ruiz Lafita would need to show conditions were good some time before March 24, 2015. Then, if they worsened in subsequent years, he might have an argument for a "change" in conditions. Unfortunately for Ruiz Lafita, the "thaw" in relations didn't substantially begin until May 2015, after the government had already denied his petition. His evidence is thus too little, too late.

Because we can perceive a rational basis for the BIA's conclusion that conditions in Cuba haven't worsened since Ruiz Lafita's first denial, his petition should be denied.

### III.

The majority's contrary arguments fail. First, the majority applies the wrong standard of review. Specifically, it cherry picks various pieces of Ruiz Lafita's evidence and faults the BIA for not explicitly addressing them, ignoring the deference we owe the BIA's decision. Take, for example, its citation to the 2020 Human Rights Report discussing Cuba's use of the COVID-19 pandemic to crack down on political opponents. Although it's possible the BIA *could* have relied on this evidence to grant Ruiz Lafita's motion, that's not the proper question. The majority acknowledges as much, disclaiming any suggestion that Ruiz Lafita's motion "should be granted"

based on this evidence. Majority Op. 18. The BIA wasn't required to specifically address the COVID-19 pandemic, or any of the pieces of evidence the majority discusses. *Zhang v. Mukasey*, 543 F.3d 851, 854–55 (6th Cir. 2008). Nor are we allowed to assume, as the majority did, that the BIA didn't consider evidence simply because it didn't mention it. *Cf. id.* In deciding that the unconsidered evidence is material, the majority incorrectly supplants its own judgment for the BIA's.

Nor does *Marqus* help the majority. There, the petitioner filed a motion to remand based on changed country conditions. The BIA spent only one paragraph—and only one sentence of analysis—considering whether petitioner's new evidence showed changed country conditions. As we held, that single conclusory sentence was insufficient to enable appellate review. *Marqus v. Barr*, 968 F.3d 583, 593 (6th Cir. 2020).

By contrast, the BIA here spent more time analyzing country conditions—indeed, its whole opinion concerned that issue. That's because, unlike in *Marqus*, Ruiz Lafita moved to remand and to reopen. Both motions require the *same* showing: material worsening in country conditions. The BIA's analysis of the one is thus entirely applicable to the other. Ruiz Lafita recognized as much; his brief didn't differentiate between the two motions and instead marshalled both old and new evidence together. That's only logical. Why require two separate, presumably identical explanations for the same issue? Courts shouldn't foist such a time-wasting redundancy onto the BIA.[1]

---

[1] The majority essentially imposes opinion-writing requirements on the BIA. But that's not our place. As discussed above, the BIA's explanation rationally disposes of Ruiz Lafita's old *and* new evidence. First, it found that the old evidence didn't show changed country conditions. Then, it determined the new evidence didn't move the needle. Courts frequently use one explanation to address multiple issues. The BIA didn't err by doing so here.

Once properly framed, it's clear the BIA opinion satisfies *Marqus*. The majority opinion tacitly concedes as much. It agrees the BIA's reasoning on the motion to reopen was sufficient. But the BIA's changed-country-conditions analysis is just as thorough as other aspects that the majority found sufficient. For instance, the BIA spends just one sentence concluding that Ruiz Lafita hasn't shown a particularized threat of torture. And the BIA doesn't discuss any specific piece of evidence, or lack thereof, on that issue. Yet the majority correctly concludes the BIA's analysis on that point is sufficient. So the BIA's conclusion that conditions in Cuba haven't worsened—reached after multiple paragraphs of analysis—is sufficient as well. The majority can't have it both ways.

IV.

One final note about what evidence we can review. The majority criticizes the BIA's failure to address the declarations from Ruiz Lafita and his mother or his achievement certificates from prison. But those pieces of evidence weren't relevant to the basis of the BIA's decision. So it didn't have to consider them. To see why, take each in turn.

First, the majority holds the BIA abused its discretion when it concluded that Ruiz Lafita's and his mother's declarations were cumulative. But those declarations go to Ruiz Lafita's particularized threat of torture. And the BIA never reached that element of his motion for remand, since the BIA concluded there was no change in country conditions. Our review is limited to the BIA's grounds for denying relief, so we can only focus on whether there was evidence of changed country conditions. *Daneshvar v. Ashcroft*, 355 F.3d 615, 626 (6th Cir. 2004). And declarations that discuss conditions in Cuba from *before* 2015 can't show that conditions have worsened in 2021. Even the majority opinion agrees. As does Ruiz Lafita's attorney, who admitted during oral argument that the declarations aren't relevant to the BIA's denial of his motion to remand.

24

Oral Arg. 5:55 – 6:07 (Q: "The affidavits and character evidence aren't relevant to the motion to remand, right, you have to get through the gateway first of changed country conditions?" A: "That is correct."). Thus, the BIA didn't abuse its discretion in ignoring irrelevant evidence.

The same is true of Ruiz Lafita's achievement certificates from prison. That evidence speaks to Ruiz Lafita's entitlement to discretionary relief. *INS v. Doherty*, 502 U.S. 314, 323 (1992). But again, the BIA didn't deny Ruiz Lafita on discretionary grounds. So that evidence isn't relevant to our review. *See also Zhang v. Mukasey*, 543 F.3d at 855 ("The Board owed no duty to rehearse the rest of her evidence for sake of completeness."). And it can't be the basis for reversal.

In sum, if Ruiz Lafita hasn't shown a change in country conditions, no other piece of evidence about mitigating factors or risk of torture can entitle him to relief. These pieces of evidence can't help him show changed conditions. So it's not our job to review them.

\*     \*     \*

The BIA properly concluded that Ruiz Lafita failed to show a material worsening of country conditions. Because imposing rigorous opinion-writing requirements on BIA decisions conflicts with our deferential review, I would deny Ruiz Lafita's petition.